BAYLISS, (MANN v.) See Case No. 9,034.

## Case No. 1,142.

### BAYLISS v. POTTAWATTAMIE COUNTY.

[5 Dill. 549.] [1]

Circuit Court, D. Iowa, 1878.

DEDICATION OF PUBLIC SQUARE—IOWA STATUTE—ESTOPPEL.

The public square in the city of Council Bluffs *held* to be effectually dedicated to the public by force of the platting and acknowledgment thereof, and acts in pais by the dedicator.

[In equity. Bill by Martha Bayliss, devisee of Samuel S. Bayliss, deceased, and administratrix of his estate, against the board of supervisors of Pottawattamie county, (the city of Council Bluffs, intervenor.) Bill dismissed.]

This suit involves the right of the plaintiff and the city of Council Bluffs (since the county sets up no claim in its own behalf or as the representative of the public) to what is called the "public square" in that city. The plaintiff is entitled to it as against the city, unless her husband, in his lifetime, made a valid dedication thereof to the public. On September 26th, 1853 (while the title to the forty acres afterwards laid off as Bayliss' addition to Council Bluffs was in the United States), Mr. Bayliss, the occupant, caused a plat to be made of that forty acres, subdividing it into fifteen blocks, with streets and alleys in the usual form, near the center of which is an open, unnumbered block, not subdivided into lots, four hundred feet square, surrounded by streets; on the middle of which block are the letters "P. S." Indorsed on the plat is the following certificate of the surveyor, and the following certificates of acknowledgments:

"I, A. D. Jones, city surveyor, hereby certify that all the streets, alleys, and public square lie as above represented on the above plat of Bayliss' addition to the city of Council Bluffs, and that the lots, streets, and alleys are described as follows: "All the lots in blocks eight, nine, and fifteen are fifty feet in width by one hundred and two feet in length. * * * The public square is four hundred feet square. * * * Surveyed and platted by A. D. Jones, April 13th, 1853. Given under my hand this 13th day of June, 1853. A. D. Jones, City Surveyor of Council Bluffs."

"State of Iowa, Pottawattamie County: Know all men by these presents, that I, Samuel S. Bayliss, proprietor of Bayliss' addition to Council Bluffs, do hereby declare and acknowledge the above plat and surveyor's certificate of the survey of said addition, as surveyed and platted by A. D. Jones, June 12th, 1853, to be correct; and I further hereby give, grant, and donate all the streets and alleys as represented on said plat to the public as highways, and for general use and

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

convenience. Given under my hand this 13th day of July, 1853. Samuel S. Bayliss."

"State of Iowa, Pottawattamie County: Before me, A. D. Jones, notary public in and for said county, appeared the above named Samuel S. Bayliss, personally known to me to be the identical person who subscribed the above conveyance, and as proprietor of said addition, and as grantor of said deed, and acknowledged the signing of said instrument to be his voluntary act and deed. Given under my hand and official seal, the 14th day of July, 1853. (Seal.) A. D. Jones, Notary Public."

"State of Iowa, Pottawattamie County: I, Frank Street, judge of said county, do hereby certify that on this day personally appeared before me Samuel S. Bayliss, and acknowledged that the description of the land as shown by the map or plat hereto attached is with his free consent, and in accordance with his desire. Given under my hand and the seal of said county, this 26th day of September, A. D. 1853. (Seal.) Frank Street, County Judge."

"To the Recorder of Pottawattamie County, Iowa: Sir:—Having, upon examination, become fully satisfied all the requirements of the law have been complied with in regard to the survey and plat of a town as shown by the map herewith attached, you are therefore authorized to record the same and the annexed certificate, in accordance with the law in such cases. Frank Street, County Judge. September 26th, 1853."

This plat, with all of the said certificates, was duly recorded September 26th, 1853.

Another plat was also made and recorded June 1st, 1854, on which the streets and the square in question were represented in the same manner. On this plat the following was indorsed:

"Know all men by these presents, that all the streets, and public square, and alleys, and lots, are of width and length as represented on the within plat by figures; all lots are one hundred and ninety-two feet in length by fifty feet in width, except where the length and width are noted on the respective lines. The lots in blocks eight, nine, and fifteen are one hundred and two feet in length. The variation of the needle, eleven degrees eleven minutes; course of lines north and south, eleven degrees; the upper regular lines are at right angles; and the irregular lines as represented on the plat as surveyed by A. D. Jones. In witness whereof, I have hereunto set my hand this —— day of May, 1854. Know all men by these presents, that I donate all the streets and alleys to the public for common use and benefit as highways. In testimony whereof, we have hereunto set our hands this —— day of May, 1854. (Signed) Samuel S. Bayliss."

"State of Iowa, Pottawattamie County: On the 1st day of June, 1854, personally appeared before me, the undersigned, a notary public within and for the state and county aforesaid, Samuel S. Bayliss, who is personally known to me to be the identical person who executed the above instrument or donation, and acknowledged the same to be his voluntary act and deed for the purposes therein expressed. Witness my hand and notarial seal, this 1st day of June, A. D. 1854. (Seal.) Jefferson P. Casady, Notary Public."

Under the act of congress entitled "An act for the benefit of citizens and occupants of Council Bluffs, in Iowa," approved April 6th, 1854, [10 Stat. 273,] Franklin Street, as county judge, entered this forty acres in trust. See chapter 88, Laws Iowa 1853, entitled "An act regulating the disposal of lands purchased in trust for town sites," approved January 22d, 1853. In disposing of this land, the above plats of Bayliss were recognized, and the square in question treated as public, and the occupants of lots were charged for their proportion of the purchase money paid to the United States on that basis. Bayliss was admitted to be the cestui que trust, and deeds were made to him and to his grantees, from time to time, by the county judge, for the lots in the addition. Bayliss sold and conveyed lots to purchasers according to the recorded plats.

Mr. Ballard testifies, in substance: "In the fall of 1853 or spring of 1854, Bayliss wanted to sell me lots in his addition on the public square, and then known as the public square. He urged them as desirable for residence lots because of their fronting on the public square. He claimed to own lots he was showing me, and spoke of their being on the public square. I have no recollection of his claiming any individual interests in the square itself." Mr. Rice testifies, in substance: "I knew Samuel S. Bayliss from 1853 to the date of his death. Am acquainted with the square in controversy, and have been since Bayliss' addition was laid out, in the fall of 1853. Bayliss showed me his plat on two occasions and took me on the ground several times, with a view to purchase a church lot on east side of the square; and afterwards he took me on the south and west sides of the square. On these occasions we conversed in relation to the square and the lots contiguous to it. He showed me lot four in block nine, with a view to my purchasing this for a church site. He represented it as fronting on the public square, and more desirable on that account. He pointed out the block bounded by Pearl, Willow, Court, and Center streets as the public square." Mr. Lewis testifies that, in 1853, Bayliss showed him the plat of his addition with the square in question shown thereon; that witness purchased of Bayliss lots on the square, Bayliss pointing out the square on the plat and speaking of the advantages of lots near the square, and of their value being greater than elsewhere, and he charged more for that reason for lots on the square. Cumulative evidence to the same general ef-

fect was also given by Mr. McBride, Mr. Dennis, Mr. Officer, Mr. John T. Baldwin, and Mr. W. H. M. Pusey.

The records of the city council show that, in 1857, the city improved the streets around the square, and in the same year the city council adopted a resolution providing for sealed proposals to fence the public square, in Bayliss' addition, provided the citizens around the square shall furnish the money and take city orders at par for the same; and many subsequent resolutions for the improvement of the square and regulating its uses, both before and after the present suit was brought, which was on July 13th, 1866.

In March, 1853, Bayliss entered into an agreement with the county judge of the county, by which he "agreed to deed to the county the ground for a public square in and for said county, as follows" (here describing the ground now in controversy). "Also another piece of ground as a site for the courthouse for said county" (here describing two lots fronting on the square). And also to make a certain donation to aid in the erection of the court-house. The county judge thereupon (March 11th, 1853) ordered as follows: "Therefore, ordered, that if the said materials shall be furnished and said lots donated according to the tenor and intent of the aforesaid bonds and instruments of agreement, the said square shall be, in that case, hereby located and established as the public square for said county, and the last described lot, in that case, be established as the site for the court-house in and for said county. T. Burdick, County Judge."

In 1866, the county definitely determined to build the court-house in another part of the city, and soon afterwards this suit was brought. But meanwhile, July 12th, 1855, on Bayliss' demand, the county judge reconveyed the court-house lots on the square to Bayliss, with this provision: "To hold the same in trust for the county of Pottawattamie until the same shall be needed to build a court-house on, or until a court-house shall be built upon the public square adjoining, and if the court-house should neither be built on said public square nor lot, then the lot becomes, absolutely, the property of the said Bayliss; and I, as such trustee, warrant the title against the claims of all persons whomsoever. Signed, July 12th, 1855. Franklin Street, County Judge."

Judge Street testified that "Bayliss never, at any time, demanded of me a conveyance of the public square." There are many minor facts in evidence, but the foregoing sufficiently show the essential features of the case.

Clinton, Hart, & Brewer, for the complainant.

L. W. Ross, solicitor for intervenor, and of counsel for the defendants.

DILLON, Circuit Judge. If the county were the only adverse claimant to the plaintiff, and were insisting that this square had been effectually dedicated to it, it may, for the purposes of this case, be conceded that the plaintiff would be entitled to the relief sought. But after the transaction with the county judge, in 1853, Mr. Bayliss made two separate plats of the property, on which this square was indicated as open and unnumbered, with the initials "P. S." therein, and containing words referring to it as a public square. It would seem, from a reference to his acknowledgment of July 14th, 1853, and to the latter part of the grant to the public of May, 1854, acknowledged June 1st, 1854, that Mr. Bayliss omitted all reference to the square. But in the surveyor's certificate indorsed on this plat, the surveyor twice refers to the square in question as a public square, and Mr. Bayliss "declares and acknowledges the above plat and surveyor's certificate to be correct;" and on September 26th, 1853, he acknowledged the plat in conformity with the statute on that subject. In the writing indorsed on the plat of 1854, the ground in question is referred to as a public square. This makes an effectual dedication under the statute—certainly when it is accepted by the city. The proofs sufficiently show such acceptance by appropriations of money for its improvement and by the exercise of legislative and municipal power over it as a public square. If Mr. Bayliss intended to exclude this square from the ground dedicated to the public, he failed to accomplish his intention.

A purchaser consulting the recorded plats, with the acknowledgments and certificates, would be justified in concluding (as several intelligent witnesses state they did in fact) that the square was dedicated to the public.

Whether we look at the recorded plats, with their certificates and acknowledgments, or to the extrinsic evidence as to Mr. Bayliss' repeated statements to persons proposing to purchase lots, that this was a public square, and that not only the immediate purchasers, but the public, have acted upon these plats and these statements, it is clear that Mr. Bayliss and his representatives are brought within the principle of equitable estoppel which so often applies to this class of cases. Cincinnati v. White, 6 Pet. [31 U. S.] 431; Dill. Mun. Corp. §§ 493, 494. It is claimed, however, that, Mr. Bayliss being dead, his statements and declarations are not competent evidence against the plaintiff. Code Iowa 1873, § 3039. I do not stop to examine or determine the point, for, if well taken, it would not exclude evidence of acts of his testified to by many witnesses, such as that he charged and received more for lots fronting on the square (simply for the reason that it was public) than for lots elsewhere, which, in every other respect, were worth as much, and the other significant fact, that, although he demanded and received a deed for the court-house lots, he made no such demand in respect of the square.

The city was incorporated before either of

the plats was recorded. The statute declares that "the acknowledgment and recording of such plat is equivalent to a deed in fee-simple of such portion of the land as is therein set apart for public use, or is dedicated to charitable, religious, or educational purposes." The city is the representative of the public rights in this square.

A decree will be entered dismissing the plaintiff's bill against the county, and also against the city, which, by intervention, also became a party to the suit. Decree accordingly.