CONRAD YOUNGERMAN, Appellant, *v.* THE BOARD OF SUPERVISORS OF POLK COUNTY *et al.*,

110  731
139  486
141  442

**Dedication:** INTENT: *Construction.* Where a dedication by a board of county commissioners expressly donates to the public streets, alleys, "market place," and "public ground," as represented on a plat, the fact that a tract designated on the plat as "public square" 1 was not mentioned in the donating clause, but was specifically mentioned in another clause as being reserved for the purpose of building a courthouse thereon, and that the tract designated as "public ground" was specifically bounded and described in the acknowledgement, shows that the term "public ground" was not intended to include the tract designated as "public square."

**RESERVATIONS:** *Fee title.* A clause in a dedication by county commissioners providing that the "public square," as represented on 2 the plat, is reserved for the purpose of building a courthouse thereon, excepts such public square from the dedication, and the fee remains in the county.

*Appeal from Polk District Court.*—HON. S. F. PROUTY,. Judge.

WEDNESDAY, DECEMBER 13, 1899.

ACTION to enjoin the board of supervisors of Polk county from selling the block on which the court house stands. The plaintiff appeals from a decree dismissing his. petition.—*Affirmed.*

*Bowen & Brockett* and *C. C. & C. L. Nourse* for appellant.

*Read & Read* and *Evans & Adams* for appellees.

LADD, J.—The board of supervisors of Polk county on the twentieth day of April, 1899, adopted a resolution asserting its intention of selling the site whereon the present court house is located, and purchasing another on the bank of the Des Moines river. With this view, the county auditor was directed to advertise such land for sale, and receive bids for thirty days, on terms stated. The plaintiff, for himself and others owning property adjacent to such site, ask that the board be enjoined from carrying out its purpose, on the ground that the block had been dedicated to public uses.

It appears that the commissioners of Polk county on May 12, 1848, entered at the land office, and subsequently obtained from the United States a patent for lot 5 in section 4, lot 1 and the Northwest one-fourth and the Northeast fractional one-fourth of section 9, and lot 5, in section 10, all in township 78 North, of range 24 West, of the fifth P. M., in pursuance of an act of congress approved January 12, 1846, granting a section of land upon which Des. Moines was situated, "provided the seat of justice of said county is located on said tract of land." Prior thereto, and on the 8th day of July, 1846, said commissioners had caused said land to be surveyed, platted,.

and the plat to be duly recorded, as required by the statutes then in force. On this plat streets and alleys were indicated as is usually done. A space bordering the Raccoon river was designated, "Public Ground;" another, dividing Market street, "Market Place;" and at the head of Court avenue still another as "Public Square," on which the court house was erected. The making of the plat was fully authorized by chapter 147 of the Revised Laws of 1843, which required it to particularly describe "all the streets, alleys, commons or public grounds;" to properly number lots intended for sale; that it be recorded,—the certificate of the survey and the acknowledgment by the commissioners to form a part of the record. When all this was done, "every donation or grant to the public or any individual or individuals, religious society or societies, or to any corporation or bodies politic, marked or noted as such on said map or plat shall be deemed in law and in equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against such donor or donors, grantee or grantees, for his, her or their use, for the uses and purposes therein named, expressed and intended to be, for the streets, alleys, ways, commons or other public uses in any town or city or addition thereto, shall be held in the corporate name thereof in trust to and for the uses and purposes set forth, expressed or intended."

II. That the county acquired an indefeasible title from the government is not questioned, but it is insisted by the appellant that the commissioners in filing the plat on which the parcel of land was marked "Public Square," conveyed it to the city of Des Moines in trust for the public. But for the certificate of survey, and the acknowledgment accompanying the plat, and made by the law a part of the record, there would be much force in this claim. *Moore v. Kleppish,* 104 Iowa, 319; *Livermore v. City of Maquoketa,* 35 Iowa, 388; *Fisher v. Beard,* 32 Iowa, 346; *City of Pella v. Scholte,*

21 Iowa, 463; *Leffler v. City of Burlington,* 18 Iowa, 361. The vital inquiry, however, is with reference to the intent with which the commissioners acted; for, to constitute a dedication, the *animus dedicandi* must have existed. To determine this, the acknowledgment will be considered in connection with the plat, the certificate of survey, and such circumstances as may throw light on the transaction. *Commissioners v. Dayton,* 17 Minn. 260 (Gil. 237). See *Bayliss v. Pottawattamie County,* 5 Dill. 549, Fed Cas. No. 1,142; *Grant v. City of Davenport,* 18 Iowa, 187.

III. The acknowledgment is in the following words: "Territory of Iowa, Polk County—ss.: We, Benjamin Saylor and Willliam A. Meacham, two of the county commissioners in and for said county, now in session this 8th day of July A. D. 1846, at Fort Des Moines, in said county, do hereby acknowledge that we donate all the streets, alleys, and public ground in the town of Fort Des Moines, as represented on the above plat, to the general public, with the following proviso: That all the streets, alleys, and public ground in said town of Fort Des Moines which now have public buildings upon them shall not be considered highways until the expiration of one year, or until the commissioners of said county shall declare them public highways. The public square, as represented on said plat, is reserved for the purpose of building a court house thereon, and such other public buildings as the county commissioners deem proper for the use of the county of Polk. The market space, as represented on said plat, is reserved for the purpose of building a market house thereon for the use of the general public, which shall be under the control and management of such officers as may have control, management, and government over the town of Fort Des Moines, the above-platted town. The public ground is bounded and described as follows: North by block thirty-seven; west by a line parallel with the east side of block twenty-eight, extending to the Raccoon river; and east by Des Moines river. B. Saylor. W. H.

Meacham. [Seal.]"  The commissioners evidently had two
purposes: (1) To plat all that portion of the land they pro-
posed to sell; and (2) to retain a suitable site for the seat
of justice, which, under the grant from congress, they were
bound to locate on the land acquired from the government.
It will be observed that streets, alleys, and "public
ground" are donated by the first sentence in express
words, but that "public square" is not mentioned; and under
the maxim, *"Expressio unius est exclusio alterius,"* it would
seem not to be included.  Nor is "public square" included
in the phrase "Public Ground," so designated on the plat.
As "public ground," in the dedication clause, may refer to
such tract, there is no occasion for extending its meaning so
as to include by implication "public square."  Enumeration,
where generalization might have served as well, has the effect
of limiting the meaning of words; and the fact that one par-
cel of land was marked "Public Square" and another "Pub-
lic Ground," and they were each specifically referred to in
the acknowledgment, clearly indicates that the one was not
intended to include the other.  Besides, "ground," in the ded-
ication clause, is in the singular, when, had the intention
been that "public ground" include "market place" and "pub-
lic square," the plural would likely have been used.  The
specific description of "public ground" at the close of the
acknowledgment points out definitely just what was intended
by that phrase.

IV.  The only reference, then, to the land in contro-
versy, is found in the sentence, "The public square, as repre-
sented on said plat, is reserved for the purpose of erecting
a court house thereon, and such other buildings as the county
commissioners deem proper for the use of the county of
Polk."  It is affirmed that, as without this the title to the
square would have passed to the city of Des Moines in trust
for the public, this amounted to no more than the reserva-
tion of a use or easement in the county to occupy the ground
with its court house and other necessary buildings.  The

acknowledgment was not so made. Besides, this assumes that the plat was filed with simply the markings thereon. Without more, these, under the statute quoted, would be expressive of an intention to dedicate. With express words excepting the tract of land so designated from dedication, however, "public square" was but a name. The commissioners had the right to withhold it from dedication, and, indeed, they were so obligated by the proviso of the grant from the government. The distinction between an exception and a reservation contained in a deed is well defined. The difference is thus stated by Shepard: "A reservation is a clause in a deed whereby the grantor doth reserve some new thing to himself out of that which he granted before. This doth differ from an exception which is ever a part of the thing granted, and of a thing in esse at the time; but this is of a thing newly created or reserved out of a thing demised that was not in esse before." A reservation is something taken back out of that which is granted,—as, for instance, rent, or some right to be exercised, as the cutting of timber,—while an exception is some part of the estate not granted at all, and which may be separately enjoyed. *Rich v. Zeilsdorff,* 22 Wis. 544 (99 Am. Dec. 81); *Craig v. Wells,* 11 N. Y. 321; *Eisley v. Spooner,* 23 Neb. 470 (8 Am. St. 128, 36 N. W. Rep. 659); *State v. Wilson,* 42 Me. 21; 3 Washburn Real Property, p. 440. But the words are often used synonymously, and, when the thing to be secured to the grantor is a part of the granted premises, it amounts to an exception, and the words "reserve" or "reservation" will be construed accordingly. 3 Washburn Real Property, p. 441; *Doe v. Lock,* 4 Nev. & M. 807. Thus, in *Roberts v. Robertson,* 38 Am. Rep. 710, the clause, "said J. C. Roberts reserving lots sold, Nos. 1, 2, 3, * * * 32, 33," was held to except the last two lots not sold from the operation of the deed. Now, we inquire, what was reserved from the dedication? The only possible answer is, the land, not merely its use, designated "Public Square." From what

reserved? From the operation of the plat as a conveyance to the city of Des Moines for the public use. By whom reserved? The county of Polk. Why was this done? Because of the county having need of it as a place on which to erect its public buildings. But the mere fact that these commissioners stated their reason for reserving the square did not place a limitation on the absolute title the county had and retained. The uses mentioned were practically the only ones Polk county had for the land. Clearly, then, the clause quoted operated as an exception rather than a reservation. The case of *Grant v. City of Davenport,* 18 Iowa, 187, has a direct bearing on this controversy. There a parcel of land bordering the Mississippi river was marked "Reserved Landing" on the plat; and, in holding that the proprietor retained title thereto, the court speaking through Wright, J., said: "Men ordinarily use the language calculated to express the idea they mean to convey. And, on arriving at this meaning, it is eminently proper to consider the circumstances surrounding them, the object designated to be accomplished, and the whole instrument in which it is found. And, when we say that this was reserved for the public, we imply that the public was making the grant. But Le Claire, and not the public, had the land; and he was laying out the town, and donating the streets, alleys, and public ground. It is his expression,—his language,—and not that of the public. He says, 'This is a reserved landing.' Reserved by whom? By the public? It is not so said. Suppose he had said, 'Reserved,' without adding the purpose; could it be claimed that it was, by such an act, given to the public? If not, no more can it in this case." Here the commissioners withheld the "public square" for the use of the people of the county. Without express words, even though reference was made in the acknowledgment to streets, alleys, the "public ground," and the "market place," the title to the "public square" might possibly have passed to the city. *Bayliss v. Pottawat-*

*tamie County,* 5 Dill. 549, Fed. Cas. No. 1,142. See *Lamar County v. Clements,* 49 Tex. 347; *Com. v. Borough of Beaver,* 171 Pa. Sup. 542 (33 Atl. Rep. 112). But, in expressly reserving it in the acknowledgment, the commissioners clearly manifested their intention not to dedicate. The public square, and not simply its use, as contended by appellant, was retained. True, it was not numbered as other lots then for sale, and undoubtedly the purpose of selling did not exist at that time. Platting was not compulsory, and the county might have retained, not only this, but all the land, had it so elected. The board of supervisors, in referring to the site as "Public Square," merely used the name as descriptive of the block. The city has treated it, in levying special taxes, as the property of the county, and has never undertaken to exercise control, such as it might have done if possessed of the title for the use of the public as a place of recreation. We have no doubt in reaching the conclusion that the site known as "Public Square," on which the court house stands, was excepted from the dedication, and that the fee thereto was retained in the county.— AFFIRMED.

GRANGER, J., not sitting.