Argued July 9, reversed September 8, rehearing denied September 22, 1914.

## HARRIS *v.* ST. HELENS.*

(143 Pac. 941.)

**Dedication—Nature and Requisites.**

1.  Dedication is an appropriation of land to a public use by the owner, and accepted for such use by or on behalf of the public, and may be express, by deed or explicit oral or written declaration, or some other explicit manifestation of purpose, or it may be implied by some act or course of conduct from which a reasonable inference of

*Upon the question of dedication of lands for public purposes, see notes in 8 L. Ed. (U. S.) 453 and 24 L. Ed. (U. S.) 743.  REPORTER.

the intent may be drawn, or which is inconsistent with any other theory.

[As to what amounts to dedication to a public use, see note in 27 Am. Dec. 559.]

**Dedication—Acceptances—Express or Implied Acceptance.**

2. Except where a municipality may not have charter powers to accept a dedication, an acceptance by its duly authorized officers may be express, by deed, or other matter of record, or, unless prohibited by a statute or ordinance, the acceptance may be implied from acts showing that the municipality has assumed control and possession of the property.

[As to when acceptance of lands to a public use is inferable, see note in 58 Am. Rep. 146.]

**Dedication—Requisites—Intention.**

3. To constitute a dedication, the owner must intend to devote his property to a public use, and this intention must be clearly and unequivocally manifested by his acts.

**Dedication—Requisites—Filing Plat.**

4. The filing for record of a plat of land divided into lots and blocks with a strip allowing the river front marked "Strand, Reserved for Wharves," does not constitute a dedication of the land so marked.

[As to dedication by maps and plats, see note in 10 Am. St. Rep. 189.]

**Words and Phrases—"Strand."**

5. The word "strand" signifies the shore or bank of the sea or a river.

**Wharves—What Constitutes.**

6. A wharf is a bank or other erection on the shore of a harbor, river or canal, for the convenience of lading and unlading ships or boats.

**Dedication—Requisites—Filing Plat—"Reserved."**

7. Under Section 718, L. O. L., providing that the terms of a writing are presumed *prima facie* to have been used in their primary and general acceptation, where a plat filing for record has a strip marked "Reserved for Wharves," the word "Reserved" means kept for future use; retained; kept back.

From Columbia: James A. Eakin, Judge.

This is a suit by W. A. Harris, against the City of St. Helens, in the nature of a cross-bill in equity to obtain a decree that plaintiff is the owner of certain real property described in the complaint and to enjoin an action at law. There was a decree for defendant

in the Circuit Court and the plaintiff appeals. The facts are concisely set forth in the opinion of the court.

REVERSED. REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Stapleton & Sleight* and *Mr. W. A. Harris,* with oral arguments by *Mr. George W. Stapleton* and *Mr. Harris.*

For respondent there was a brief over the name of *Messrs. Dillard & Day,* with an oral argument by *Mr. William B. Dillard.*

Department 1. MR. JUSTICE RAMSEY delivered the opinion of the court.

The defendant herein, as plaintiff therein, commenced an action of ejectment to recover from the plaintiff herein as defendant in said action a small tract of land at and in front of Cowlitz Street in the City of St. Helens, which is described in the complaint. Upon the filing of the complaint in said action, the plaintiff herein answered in said action, and also filed his complaint in this suit in the nature of a cross-bill, asking for equitable relief. Among other things the complaint in this suit alleged:

"That about the 2d day of January, 1865, there was filed in the office of the county clerk of Columbia County, State of Oregon, what purported to be a plat of the town of St. Helens, and said plat pretended to cover a portion of the donation land claim of H. M. and Elizabeth Knighton in section 4, township 4 north, range 1 west, and section 33, township 5 north, range 1 west, but that said plat was not signed or acknowledged by any one then owning or having any interest in the said Knighton donation land claim or any portion thereof, and that no writing of any description

whatsoever pretending to dedicate the streets, alleys or public squares, as shown upon said plat, was filed or recorded with said plat, nor was any such writing ever signed, executed, or acknowledged by any person or persons owning or having any interest in said donation land claim, or any portion thereof.

"That upon said plat so filed as aforesaid, the strip of land bounded on the east by the Columbia River, on the north by block 3, as shown on said plat, on the south by block 6, and on the west by River Street was expressly excepted and reserved from the effect of said platting by the indorsement, made upon said plat, in these words, 'Reserved for Wharves,' and that it was not the intention or purpose of the makers and filers of said plat to dedicate said strip so bounded as aforesaid to streets or any other public uses or purposes, but that it was the intention of the makers and filers to specifically and expressly reserve the said tract so bounded as aforesaid for the private use of themselves and their heirs and assigns, as a place for the location and maintenance of wharves and docks to be owned and operated by them as a private enterprise.

"That no streets were shown upon said plat as extending into, over or across said tract aforesaid, nor has any such street ever been opened up, improved or taken possession of, or in any manner used or claimed by the public over said tract since the filing of said plat.

"That more than seven years had elapsed from the filing of said plat as aforesaid to the date of the incorporation of the said City of St. Helens, and that no street had been taken possession of, opened up or improved by the said town of St. Helens or by the public over, through or across the tract of land described in the action at law heretofore instituted as being in the possession of this plaintiff, and that if any street had, prior to said date, by dedication or otherwise been extended or laid out over said tract of land, the public

and the said town of St. Helens had, by lapse of time, lost all right and interest therein.

"That said defendant as such municipal corporation has not, by any act, ordinance, resolution or otherwise, accepted any of the streets, alleys or public squares as shown upon said plat since the date of its incorporation, and plaintiff alleges that if the maker and filer of said plat dedicated or attempted to dedi-cate said streets, alleys or public squares to said town of St. Helens or the public, said dedication has failed by reason of the failure of the said town to accept the same, and for the further reason that the said town or public had not, prior to the incorporation of said town, accepted, opened up or improved any street extending over said premises within the period of seven years from the date of said pretended dedication.

"That on and for more than 10 years prior to the 5th day of May, 1903, the tract of land described as: 'Commencing at a point north 74 deg. 30 min. east 60 feet from the northeast corner of lot 12, in block 10 in the City of St. Helens, in said county and state, said point being in the line of easterly prolongation of the southerly boundary line of Cowlitz Street; thence running east on said line to tide-land now owned by W. A. Harris; thence commencing at the said point of beginning and running north 15 deg. 30 min. west and at right angles to the said southerly line of Cowlitz Street 69 feet to a point; thence north 74 deg. 30 min. east to tide-land now owned by said Harris; thence southerly along the line between the tide-land and strand to the intersection of the easterly extension of the southerly boundary line of Cowlitz Street'—said above-described tracts being situated in the City of St. Helens, was open, unimproved land, the record title of which stood in the name of one Hannah Tyszkiewicz, and the said record owner had at all times claimed to be the owner thereof, and her title to the same was at all times recognized by the said plaintiff and the said defendant, and the public generally, as a good and sufficient title; that on said date, with the

knowledge of said defendant and the public, and fully
believing that the said Hannah Tyszkiewicz had good
and sufficient title thereto and good right to sell the
same, and fully relying on the sufficiency of said title,
and believing that said defendant had no right or in-
terest in said premises, this plaintiff purchased the
same from the said Hannah Tyszkiewicz, paying a
valuable consideration therefor, and taking her deed
thereto, and immediately thereafter placing the same
upon the records of the office of the county clerk of
Columbia County, Oregon, where same has at all times
since the said 15th day of May, 1903, remained a part
of the public records of said county.

"That thereafter, with the full knowledge of the
defendant and the public, plaintiff relying upon the
sufficiency of his title thereto, and in good faith took
possession of said premises, and has at all times since
said date, by himself and tenants, remained in posses-
sion thereof and exercised acts of ownership there-
over; that plaintiff has, with the full knowledge of the
defendant and public, improved said premises by fill-
ing up the low places thereon, and by erecting a store
thereon, 24x50 feet, in the year 1903, and another store
building thereon, 30x60 feet in the year 1905, at a cost
to himself in excess of $3,000; that he has put side-
walks in front of said property in compliance with the
ordinances of said city, and filled in and improved the
street in front thereof; that said premises have been
listed for taxation by the said defendant and by the
county of Columbia, and assessed to this plaintiff, and
that plaintiff has paid taxes thereon to the county of
Columbia for state, county and school purposes, and
to the City of St. Helens, the defendant herein, for
municipal purposes. That the said defendant has, at
all times prior to the institution of this action, recog-
nized plaintiff's title and ownership over said prem-
ises and his right to the possession and occupation
thereof, and that by reason of the failure of the said
defendant to assert any right, title or interest in said
premises, and by reason of the defendant's silence

and acquiescence in the plaintiff's possession thereof, and in his expenditure of large amounts of money thereon in improving said property, and in the erection of buildings thereon, and in the receipt from this plaintiff of taxes assessed against said property for municipal purposes, said defendant of right should be, and is estopped from now claiming or asserting any title or interest in said premises adverse to this plain-·tiff.

"That during all the times herein mentioned, the Columbia River was, and now is, a navigable stream in which the tide ebbs and flows to a point above or south of the town of St. Helens, Columbia County, Oregon, and upon which there are tide and shore lands in said county and state, and in front of said City of St. Helens.

"That the strip and tract of land described as follows 'That tract of tide-land fronting on section 3, township 4 north, range 1 west, W. M., bounded and described as commencing at a point which bears north 74 deg. 30 min. east 338 links from the northeast corner of lot 12, block 10 in the town of St. Helens, and in a right line with the southerly boundary of Cowlitz Street; thence south 74 deg. 30 min. west 169 links to the foot of the rock bluff and ordinary high-tide mark; thence north 3 deg. west along the line of ordinary high-tide mark 214 links to the extension of the division line between lots 21 and 22, block 11, in said town; thence north 74 deg. 30 min. east 75 links to meander line of low-water mark; thence southerly along the meander line of low-water mark to the place of beginning and containing 254/1000 of an acre of tide-land in Columbia County, Oregon'—described in the amended complaint heretofore filed in the action at law herein, was during all the times herein mentioned land lying between ordinary high and ordinary low water, and tide-land on the Columbia River in said State of Oregon, and also during all times prior to the 18th day of May, 1882, tide and shore land belonging to and property of the State of Oregon.

"That on the 18th day of May, 1882, the said State of Oregon, in pursuance of the statutes in such cases made and provided, sold and by properly executed deed conveyed to E. M. Schintaffer the tract and parcel of land hereinabove described.

"That thereafter and prior to the commencement of the action at law herein, this plaintiff purchased and became the owner of said above-described tract of tide-land by mesne conveyances from said E. M. Schintaffer, and that he is now the owner thereof, and that the remaining portion of the land described in said action at law was purchased as hereinbefore set out."

The defendant answered the complaint, admitting parts thereof, and denying others, and setting up much affirmative matter. The reply denied all of the affirmative matter of the answer that was not admitted by the allegations of the complaint. The trial court made findings and entered a decree in favor of the defendant and against the plaintiff. The plaintiff appeals therefrom.

We have read and considered the evidence. The first and most important point in this case is as to the effect of the plat of the town of St. Helens, filed and recorded January 2, 1865. This plat seems to have been made some years prior to the date of its recording. It laid out a large piece of land into lots and blocks and streets. Several parcels were marked as squares. The streets are 80 feet wide, and run north and south and east and west. The east boundary of the plat is the Columbia River. Except in front of blocks 10 and 11, the lots appear to extend to the river. East of blocks 10 and 11, and lying between said blocks and the Columbia River, is a narrow strip of land, extending to the river, that is not laid out into lots or blocks. It appears to be a little longer north and south than said two blocks, and about half the width

of one of them.   Cowlitz and St. Helens Streets run east and west, and the east ends of said streets extend to, but not across, said tract.   Said tract has the following words written upon it: "The Strand, Reserved for Wharves."   Said plat contains no other words to indicate what was to be done with said tract.   The map shows that the words "Reserved for Wharves" are written on the margin of the river as represented upon the plat.   Said plat was not signed or subscribed by anyone, nor was it accompanied by any deed or paper executed by anyone purporting to dedicate the streets, alleys or public squares or any land referred to in said plat.   The plat alone was recorded.   Afterward lots were sold by the persons who laid out said town, and they were described in the deeds with reference to said plat and as therein described.   The City of St. Helens was not incorporated until several years after said plat was recorded.   The tract in dispute is plainly marked on said plat as "The Strand," as stated *supra.*   The City of St. Helens has never used any part of said tract for wharfing purposes.   Private persons have, from time to time, used portions of said lands for wharves. The plaintiff purchased the part of said tract in dispute on May 5, 1903, of Hannah Tyszkiewicz, who appeared to be the owner thereof, and paid her a valuable consideration therefor and received from her a proper deed of conveyance.   This deed conveyed to the plaintiff the title to said property, *unless* the persons who laid out said town and had said plat recorded, as stated *supra,* by said act dedicated said tract designated as "The Strand," to *the public* for wharves.

The evidence shows that nearly all of said tract is claimed by private individuals and that they have possession thereof, and that there are from 15 to

buildings thereon belonging to private persons. These buildings seem to have been placed on said tract without objection from the defendant, except that the city objected to the plaintiff's construction of an addition to his building thereon. The plaintiff has paid taxes on said property ever since he purchased it, as stated *supra.* The plaintiff contends that the facts are of such a nature that they estop the defendant to claim said property; but we do not find it necessary to pass on the question of estoppel.

1. The defendant has no title to said premises, *unless* it obtained it by dedication. Dedication is an appropriation of land to a public use, made by the owner, and accepted for such use by or on behalf of the public. A dedication may be *express,* as when the intention to dedicate is expressly manifested by a deed or an explicit oral or written declaration of the owner, or some other explicit manifestation of his purpose to devote the land to public use. An *implied* dedication may be shown by some act or course of conduct on the part of the owner from which a reasonable inference of his intent may be drawn, or which is inconsistent with any other theory than that he intended a dedication: Black's Law Dictionary (2 ed.), pp. 340, 341.

13 Cyc., page 453, says:

"No particular form is necessary to the validity of a common-law dedication, and it need not be in writing, as the statute of frauds has no application to the doctrine of dedication. All that is necessary to the validity of a dedication is the assent and intent of the owner to appropriate it to public use, and any act or acts clearly manifesting an intent to dedicate is sufficient."

The same volume, on page 452, says:

"In order to constitute a valid dedication there must be an intention on the part of the owner to devote

his property to the public use, *and the intention must be clearly and unequivocally manifested.* Nevertheless the intention to which courts give heed is not an intention hidden in the mind of the land owner, but *an intention manifested by his acts.*"

The same volume, on pages 457, 458, *inter alia,* says:

"According to the great weight of authority a dedication, made as hereinbefore described, is irrevocable, and the dedicator is forever concluded from exercising any authority or setting up any title to the same, and that, too, *although there has been no formal acceptance by the public authorities.*"

On the point that no formal acceptance of a dedication is necessary, see, also, *Christian* v. *Eugene,* 49 Or. 170 (89 Pac. 420); *Oregon City* v. *Oregon C. R. Co.,* 44 Or. 165 (74 Pac. 926); *Carter* v. *City of Portland,* 4 Or. 339.

2. Except in cases where a municipality may not have the charter powers to accept a dedication, an acceptance by a municipality by its duly authorized officers may be *express* by deed or by some matter of record, or unless prohibited by statute or ordinance, the acceptance may be *implied* from some act or acts showing that the municipality has assumed control and possession of the property dedicated, or the like acts: 13 Cyc. 469.

3. Referring to a dedication of land for wharves, 13 Cyc., pages 449, 450, says:

"The owner of the soil can dedicate the soil to the public for the use of a landing-place or wharf. The difficulties met in a case of this kind arise from the different rules as to the ownership of the soil along navigable and non-navigable rivers. *The establishment of a wharf* or landing-place *which is used by the public is perfectly consistent with private ownership,*

and there is no such presumption from so doing of the owner's intent to dedicate.''

It is clear that, to constitute a dedication, the owner must intend to devote his property to a *public* use, *and this intention must be clearly and unequivocally manifested by his acts.*

4. In this case is it shown that the owner of the land in question intended to devote it to a *public use?* He designated the land as ''The Strand,'' and added, ''Reserved for Wharves.''

5. The word ''strand'' signifies ''shore'' or ''bank'' of the sea or a river: Black's Law Dictionary (2 ed.), p. 1113.

6. A ''wharf'' is a bank or other erection formed on the shore of a harbor, river or canal for the convenience of lading and unlading ships or boats. As shown by the plat referred to *supra* the owner ''reserved'' the strand or shore of the river for wharves.

7. The terms of a writing are presumed *prima facie* to have been used in their ''primary and general acceptation'': Section 718, L. O. L. The Century Dictionary defines ''reserved'' thus: ''Kept for another or future use; retained; kept back.'' This is the ''primary and general acceptation'' of that word. The phrase ''Reserved for Wharves,'' written in that part of said plat, marked ''Strand,'' signifies that the owner retained or kept back the tract represented by that space for wharves. Wharves may be private property; and hence the words ''Reserved for Wharves'' do not manifest an intention on the part of the owner to part with the title to the strand or to devote it to a public use. He may have intended to retain it until it should be needed for wharves, and then sell it to persons desiring to engage in the business of

operating wharves. There is nothing in the words used to indicate that he intended to devote said property to the public use as a place for wharves. The use of the word "reserved" tends to negative such an intention.

In *Baker* v. *Vanderburg*, 99 Mo. 378 (12 S. W. 462), the facts were that an addition to Kansas City was laid out and recorded, and on the plat a block was marked with the following words: "This park is reserved from public use, and title kept in proprietors, E. M. McGee, N. Holmes." It was claimed that said block was dedicated as a park.

Commenting thereon the court says in part:

"Counsel for the appellant present a great many propositions of law based upon the assumption that Holmes and McGee, by the plat, dedicated the square to public use as a park. It becomes necessary at the outset to determine whether this assumption is well founded. * * To what public use did the proprietors devote this parcel of land? They say on the face of the plat, 'This park is reserved from public use, and title kept in the proprietors.' This statement is in effect repeated in the acknowledgment. They not only say the title is kept in themselves, which would have passed to the county had the square been devoted to public use, but they say the property is reserved from public use. Stronger language could not have been used to show that they did not intend to devote the parcel of land to public use. This statement completely overcomes any inference that might have been drawn had no statement been made, or had the word 'park' only appeared upon the face of the plat. But the contention seems to be in effect, if not in terms, that we should strike out and disregard all this statement after the word 'park.' We know of no rule of law, ancient or modern, which gives to the courts power to deal with contracts in any such a way."

In *Cowles* v. *Gray,* 14 Iowa, 1, the trial court had charged the jury in part as follows:

"Again, in the case supposed, if there is in fact a strip of land not exceeding from 30 to 50 feet wide between Front Street of said town and the river [the Mississippi], and nothing appears on the map to show that said land was reserved for private purposes, the same is dedicated to the public for the purposes of a front, or water street," etc.

Commenting on said charge, the court says:

"Such is not the law of dedication in this state. A proprietor is not divested of the title or use of his land by any presumption of that kind. If he lays off a town upon his land, and has the same duly surveyed, platted, acknowledged and recorded, the title to such portions of the land pass to the public as shall therein be set apart for public use. * * Nor are we willing to admit the idea, intended to be shadowed forth in said constructions, that the mere circumstance of the Mississippi River flowing hard by said town can have the effect to raise in law the presumption that any ground which may be found situated between it and said town plat shall be deemed to be dedicated to the public as a wharf or landing-place for said town, whether the same is so designated on the plat or not. It was clearly competent for the proprietors, in laying off a town on the river, to withhold from public use whatever ground, and wherever situate, that they may choose, *and as a matter of law and fact it is withheld, unless affirmatively it appears to be set apart for the public use.*"

In *Grant* v. *Davenport,* 18 Iowa, 179, the facts were that the proprietor, in platting a town, marked one tract, which was bounded on three sides by public streets and on the fourth by a navigable river, by lines which separated it from the streets, and by the words

"Reserved Landing." Commenting on said facts, the court in that case says, *inter alia:*

"In the first place we are not of the opinion that the tract of ground, marked 'Reserved Landing,' was intended by Leclaire to be appropriated to the public. He donates and grants the 'streets, alleys and public grounds to public purposes.' There were other public landings fronting on the river other than that 're-served,' to which, so far as a landing was concerned, the language could apply. And why use this language, if all were alike public? Why separate it from that which was public by lines and marks, which, upon defendant's theory, are meaningless? Not only so, but why *reserve for the public* that which was already sufficiently appropriated without the use of such language? The proprietor had a clear right to make this or any other reservation. * * If the language employed had been, 'reserved for public landing' or 'public landing,' or the like, the intention would have been clear against the donor; and the fact that he did not thus make the claimed appropriation—a method not unusual, and indeed * * common—tends strongly to show the meaning of the reservation. Men ordinarily use language calculated to express the idea they mean to convey. * * He [the proprietor] says this 'is a 'reserved landing.' Reserved by whom? By the public? Certainly not, *for the public never had it.* For the public? It is not so said. Suppose he had said 'reserved,' without adding the purpose, could it be claimed that it was, by such an act, given to the public? If not, no more can it in this case."

In *Palen* v. *Ocean City*, 64 N. J. Law, 671, 672 (46 Atl. 775), the court says in part:

"As to streets, parks and public places the filing of a map, on which they are named as such, or their character plainly indicated, and the making of conveyances by reference to such map, will operate conclusively as a dedication. * * The map * * certainly shows a

wharf in fact and in name, and the question, therefore, is whether thereby there arose a dedication to public use. We have been referred to no decision that the mere portrayal on a map of a wharf, whether existent or projected, shows an intention to dedicate the wharf to public use. A wharf is very different from a highway or a park. In *O'Neill* v. *Annett,* 27 N. J. Law, 290 [72 Am. Dec. 364], Chief Justice GREEN asserts that the principle of dedication of highways and public squares does not extend to public landings, and it is plain that he was right. A landing may be public in the sense that it is open to all comers, but wharfage is demandable by someone, and in order to conclusively indicate that the public is to have a proprietary right, something more than calling the structure a 'wharf' is essential. It is a wharf whether in private or public control, *and its delineation and name on a map have no effect whatever in determining its character."*

In *Cleveland* v. *Bergen Building & Imp. Co.* (N. J. Ch.), 55 Atl. 177, part of the syllabus is:

"Conveyances by the owners of lots referring to two maps in one of which a street is laid out, and in the other of which a strip therein is marked 'reserved,' do not amount to a dedication of the strip to public use."

See, also, *Youngerman* v. *Board of Supervisors,* 110 Iowa, 731 (81 N. W. 166).

Calling the tract in dispute the "Strand" is no evidence that the proprietor intended to donate or dedicate it to the public, and adding the words "Reserved for Wharves" affords no evidence of such an intention. The rule is that, to constitute a valid dedication, there must be an intention on the part of the owner to devote his property to a public use, *and this intention must be clearly and unequivocally manifested.* In this case, we hold from the evidence that the persons who laid out the town of St. Helens, as stated *supra,* did not dedi-

cate the tract of land, designated on the said plat of said town as "The Strand, Reserved for Wharves," to the public, and that the defendant, the City of St. Helens, acquired no interest therein, and that the defendant has no right or title to any portion of the said *strand* that is claimed by the plaintiff in the complaint. There is no evidence to show a dedication or an intention to dedicate the property to *a public use.*

We find that the plaintiff is the owner in fee of all of the real property by him claimed in his complaint, and that the defendant has no right or title to said real premises, or to any part thereof, and that the plaintiff is entitled to the relief prayed for in his complaint.

The decree of the court below is reversed, and this cause is remanded to the court below, with instructions to enter a decree in favor of the plaintiff, in accordance with his complaint and the terms of this opinion.

                    REVERSED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR JUSTICE EAKIN and MR. JUSTICE BURNETT concur.

---

Motion to Dismiss Appeal allowed September 22, 1914.