Submitted on briefs July 9, affirmed October 9, 1928.

AMANDA HENDRICKSON *v.* CITY OF ASTORIA.

(270 Pac. 924.)

For appellant there was a brief over the name of *Mr. H. K. Zimmerman,* City Attorney.

For respondent there was a brief over the names of *Mr. C. W. Robison* and *Mr. Harold Banta.*

BEAN, J.—Flavel Street is in Union Addition to the City of Astoria. It is platted nineteen and one-half feet wide. Along this street is a raised board walk about five feet wide, extending from Bond Street, where it starts at the ground level, and rises on a gradual incline up to and past plaintiff's house. At the point where plaintiff fell off the walk is about eight feet above the ground and is supported by pilings. Plaintiff's house is on the east side of the street. A hand-rail about three feet high runs along both sides of the walk to prevent people from slipping

and falling off the same. On the east side, for a space of twenty-nine feet, at the time of accident, the hand-rail was broken down.

Union Addition was laid out and platted in 1885, and duly recorded in January, 1886. The owner of the land platted declared "all streets shown on the plat are to be forever free and are hereby dedicated for public use." The owner duly acknowledged the plat and specification of the addition. The tract of land platted as Union Addition is described as "located in the Northwest corner of the John McClure Donation Land Claim in section 7, Tp. 8 N., R. 9 West, Willamette Meridian," and the boundaries are described substantially as follows:

The tract contains two acres in a square; the west boundary commencing at the northwest corner of the said Donation Land Claim, plainly marked with a basalt stone, extends along the west boundary of said claim 297 feet. The north and south boundaries "are at right angles to the west boundary." Two streets running north and south are shown on the plat.

Plaintiff alleges:

"That said sidewalk is a public sidewalk situated on said public street and is used by the general public as a highway and thoroughfare, and that said sidewalk has been and now is constructed, maintained and repaired by the authority of the defendant City of Astoria, and that said sidewalk and said street was the property of and owned by said defendant, City of Astoria * * "

and that it was the duty of said defendant to keep said walk in repair.

The defendant in its answer denied that Flavel Street was a public street of the city. The defendant city introduced in evidence a plat of Trullinger Addition to Astoria and by measurements taken from this

plat it is claimed that Flavel Street does not connect with Bond Street, as it appears on the ground, but that the place in the walk where the plaintiff fell, and was injured, is about eight feet north of the north end of Flavel Street and outside of Union Addition.

It is also claimed by the city that while Flavel Street was dedicated as a public street, the dedication was never accepted by the city authorities.

The only question submitted upon this appeal is— Was the place of plaintiff's alleged injury a public street or walk, under the control of defendant, so as to place upon the defendant the duty of keeping the same in repair, and so as to render defendant liable for damages occurring thereon by reason of lack of repair? All other issues are waived by defendant. Defendant raised this question by a motion, interposed at the appropriate time for a directed verdict in favor of defendant.

The testimony of plaintiff on this point tended to show that she had been familiar with Flavel Street and the sidewalk thereon at 154 Flavel Street for about 25 years, and during all that time the walk had been maintained with railings on it and that the street extended to Bond Street where it now is; with houses on both sides of the street; that plaintiff had resided at 153 Flavel Street for about ten years and used the street from her residence to Bond Street for travel; and that the street had been traveled by the residents of that neighorhood and the public generally. It does not appear who constructed the walk.

It is shown by the testimony of Mr. McClanathan, city engineer, who had held that position for about five years, that he was engaged in putting "a sewer system through Flavel street." It also appears that

after the accident the street commissioner repaired the broken rail.

On March 1, 1926, certain property owners on Flavel Street petitioned the city commissioner to improve the street from Bond Street to the south terminus of Flavel Street and the same was referred to the city manager and commissioner on streets and public works. These officials on April 1, 1926, reported to the city commissioner, in part as follows, that:

"We beg leave to report that the assessments on prior improvements have all been paid to date with the exception of one lot on which there is $71.71 delinquent and that there should be no objection to an improvement account of delinquent assessments, however, we deem it unadvisable to improve the Street until the Bond Street improvement is completed so that a proper improvement may be made to join with the Bond Street improvement which is now under way,"

and recommend that the petition be filed until some future date and that in the meantime the property owners be requested to move the buildings which encroached upon the street.

This report was duly adopted April 5, 1926.

It appears the city officials were several times notified of the bad condition of the street and walk and requested to repair the same and that they orally promised to do so but failed.

 Laying a sewer "through" the street and making improvements thereon and assessments to pay for the same, making repairs on the walk and maintaining a street light on the street, and entertaining a petition for further improvements from its south terminus to Bond Street, as shown by the testimony, indicated that the city authorities had accepted the

dedication of the street and exercised dominion and control over the same as a public thoroughfare. The testimony was sufficient to be submitted to the jury on this question, and warranted the jury in finding that the street and walk was a public thoroughfare of the city and that it was the duty of the municipality to keep the walk in a reasonably safe condition for public travel thereon. Much of the testimony was somewhat general but seems to have passed without challenge as to its correctness.

■ Under the charter of the City of Astoria, the city has the primary power to build and improve streets and sidewalks within the city limits, and it is its primary duty to repair and maintain such streets and sidewalks in a safe condition for public travel, and it also has the power to determine the character and extent of such improvements, and to determine how the expense of making such improvements shall be paid.

■ The city was not required to improve the street or sidewalk on Flavel Street, or any portion of it. It had the legal right to leave the street in a state of nature, and in such case it would not be liable to one injured thereon, but if the city does make such improvements, and throws them open to public travel, that would be an invitation to the public to use such street and sidewalk, and if it knowingly and negligently permitted such improvements to get into such a condition of repair as rendered them unsafe for public travel, and a traveler thereon without fault on his part is injured by reason of such unsafe condition of the improvement, the city would be liable for such injury.

■ A dedication partakes both of the nature of a grant and a gift, and is governed by the fundamental

principles which control grants and gifts. A dedication, like a contract, consists of an offer and an acceptance. Subject to certain exceptions, not necessary to mention here, as a general rule it is well settled that a dedication is not binding and conclusive on either party until accepted. This rule applies to the dedication of streets and highways to public use. Property owners cannot for their own benefit or convenience impose a street or highway upon a municipality against its will and compel it to improve or repair the street or highway: 18 C. J., p. 72, § 67; *Moore v. Fowler*, 58 Or. 292 (114 Pac. 472); *Carter v. Portland*, 4 Or. 339; *Davenport v. Buffington*, 97 Fed. 234–238 (38 C. C. A. 453, 46 L. R. A. 377). Unless required by statute, no formality is necessary to a valid acceptance: 18 C. J., p. 77, § 72; *Christian v. Eugene*, 49 Or. 170 (89 Pac. 419); *Oregon City v. Oregon C. R. Co.*, 44 Or. 165 (74 Pac. 924); *Carter v. City of Portland*, 4 Or. 339.

An offer of dedication may be impliedly accepted by some act or acts showing that the municipality has assumed control and possession of the land dedicated as a public street, provided the act or acts relied on are unequivocal and not isolated or equivocal: 18 C. J., p. 81, § 80.

As a general rule, if all the facts and circumstances taken and considered together, clearly, certainly and satisfactorily show that the authorities acting in behalf of the public, intended to accept the offer of dedication, then an acceptance is proven: 18 C. J., p. 77, note citing *Dewey v. Chicago*, 274 Ill. 268, 273 (113 N. E. 599).

As stated by Mr. Justice RAMSEY, in *Harris v. St. Helens*, 72 Or. 377, 387 (143 Pac. 941, 943, Ann. Cas. 1916D, 1073):

"Except in cases where a municipality may not have the charter powers to accept a dedication, an acceptance by a municipality by its duly authorized officers may be express by deed or by some matter of record, or unless prohibited by statute or ordinance, the acceptance may be implied from some act or acts showing that the municipality has assumed control and possession of the property dedicated, or the like acts: 13 Cyc. 469."

■ Such important municipal acts as the construction of a sewer by the municipal authorities, at the expense of the city, in a dedicated street and maintaining a street light thereon strongly indicate that the city had accepted the dedication of the street "through" which the sewer is constructed and upon which the light is maintained: 18 C. J., p. 85, note; *Sheridan* v. *Salem,* 14 Or. 329, 336 (12 Pac. 925); *Ridings* v. *Marion Co.,* 50 Or. 30 (91 Pac. 22); *Arnold* v. *Orange,* 73 N. J. Eq. 280, 283 (66 Atl. 1052); *Twedell* v. *St. Joseph,* 167 Mo. App. 547 (152 S. W. 432); *Newton* v. *Dallas* (Tex. Civ. App.), 201 S. W. 703.

■ By describing the north line of Union Addition as at a right angle with the west line of the John McClure Donation Land Claim, there is a little over 100 feet of the north end of Flavel Street, which, according to plat of Trullinger Addition, is not platted or embraced in Union Addition. Which plat is correct, we are unable to say. No survey was made for the purpose of this case. We do not consider the matter important. The city authorities recognized the whole of Flavel Street extending to Bond Street on the north and held it out as a public highway.

Such questions often arise, as shown in White on Negligence of Municipal Corporations, page 578, Section 469, which reads in part as follows:

"In all these cases the essential fact seems to be that the city holds it out to the public as a part of the public highway and permits and impliedly sanctions its use for the purposes of travel. On this principle a city may well be held liable for personal injuries sustained from a defective sidewalk, continuous with and used as a part of the regular sidewalk of the street, with no line of demarcation, although it is situated on private property."

 It is not essential in all cases for the purpose of this rule that the sidewalks should be built within the limits of the street as laid out: Ibid.

 The trial court is criticised for admitting evidence of repairs of the walk made after the injury occurred. We think the testimony was competent for the purpose of showing that the city assumed control over the sidewalk.

The true rule might perhaps better be found in Elliott on Roads and Streets, Volume 2, page 1608, Section 1161. The writer says:

"Thus, it (subsequent repair) may be competent for the purpose of showing that the place where the injury was received was under the control of the defendant." Citing *City of LaFayette* v. *Weaver,* 92 Ind. 477; *Rusher* v. *City of Aurora,* 71 Mo. App. 418; *City of Jeffersonville* v. *McHenry,* 22 Ind. App. 10 (53 N. E. 183); *Sheridan* v. *City of Salem,* 14 Or. 328 (12 Pac. 925); *Brennan* v. *St. Louis,* 92 Mo. 482 (2 S. W. 481).

In McQuillin on Municipal Corporations, Volume 6, page 5623, in note 23, the writer says:

"The fact that after the accident the municipality caused the sidewalk to be repaired is material to show assumption of control of the sidewalk by the municipality," citing *Benton* v. *St. Louis,* 217 Mo. 687 (118 S. W. 418, 129 Am. St. Rep. 561), and *Hemphill* v. *Morehouse,* 162 Mo. App. 566 (142 S. W. 817).

White on Negligence of Municipal Corporations, states the rule in this language on page 996, Section 829:

"Evidence of subsequent repairs is also admissible, as a circumstance tending to show a previous recognition and adoption or assumption of control over the street or sidewalk," and cites *Manderschild* v. *Dubuque*, 29 Iowa, 73 (4 Am. St. Rep. 196); *Hemphill* v. *Morehouse*, 162 Mo. App. 566 (118 S. W. 418, 129 Am. St. Rep. 561); *Lebanon* v. *Schwartz*, 4 Ohio App. 173; *Folsome* v. *Underhill*, 36 Vt. 580; and *Benton* v. *St. Louis*, 217 Mo. 687 (118 S. W. 418, 129 Am. St. Rep. 561).

There was no error in denying defendant's motion for a directed verdict. The learned trial judge plainly submitted the case to the jury and explained the law as applying to the question in substance as stated above.

The judgment is affirmed. 　　　　Affirmed.