Argued and submitted May 24, reversed and remanded September 28, 2005

## Jeri WEATHERFORD,
*Appellant,*

*v.*

## COUNTY OF KLAMATH
## and Carl Burkhart,
## Klamath County Sheriff,
*Respondents.*

## 0002933CV; A122864

120 P3d 530

Nathan Ratliff argued the cause for appellant. With him on the brief were Michael Ratliff, and Ratliff & Whitney-Smith, P. C.

Ryan James Vanderhoof argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Linder* and Wollheim, Judges.

EDMONDS, P. J.

---

* Linder, J., *vice* Richardson, S. J.

**EDMONDS, P. J.**

Plaintiff was injured when she slipped on ice in the parking lot of the Klamath County Jail. Plaintiff alleged that the county was negligent in failing to remove snow and ice from the parking lot, failing to utilize sand or other materials to improve traction or cause accelerated melting of the snow or ice, and failing to warn persons of the existence of snow and ice. The parties proceeded to trial and, at the close of evidence, the trial court granted the county's motion for a directed verdict on the ground of discretionary immunity. The court entered judgment for the county, and plaintiff appeals. We reverse and remand.

Because the trial court granted the county's motion for a directed verdict, we state the facts in the light most favorable to plaintiff. On a winter morning in 1998, plaintiff visited the Klamath County Jail to attend a court proceeding. When she arrived at the jail parking lot, plaintiff parked in a designated parking place and proceeded toward the gated entrance of the jail. While walking across the parking lot, plaintiff slipped on an icy surface and broke her ankle in two places.

On the morning of plaintiff's fall, Gary Shepherd, then a sergeant with the Klamath County's Sheriff's Office, arrived for work at the jail at around 5:00 a.m. Shepherd noticed icy conditions and decided to spread a chemical agent, referred to as "ice melt," around the jail. Shepherd, with the help of other workers, spread the ice melt on the approach way from the parking lot, on the sidewalk areas in front of the jail, on the "threshold" and porch areas, and on the sidewalk to the front door of the sheriff's office. Shepherd exhausted his supply of ice melt and called the maintenance department to request more.[1] He left a message with Tom Banks, the Klamath County Maintenance Supervisor, to the effect that "they had * * * some ice in the parking lot up at the jail." Banks then traveled to the jail, and provided additional

---

[1] As it turned out, there were two or three more bags of ice melt, of which Shepherd was unaware, in the maintenance building behind the jail. The bags were not discovered until after plaintiff's fall.

ice melt to distribute through the pathway, along the sidewalks, and "along the driveway where people would normally walk in to access the courtroom." Later, plaintiff fell in an area approximately 10 to 15 feet beyond where the ice melt had been applied.

On direct examination, Shepherd was asked, "Was there any kind of policy or direction to tell you where to spread that [ice melt]?" Shepherd answered, "No." On re-direct examination, he testified as follows:

"Q: Deputy Shepherd, uh, did anybody ever give you explicit instructions on where to spread or not spread ice melt?

"A: No, Sir.

"Q: Okay. Um, was it basically, up to you to spread it where you felt it necessary and appropriate?

"A: Basically, it was a judgment call, just like shoveling the snow. When I get a crew out in the morning we just put it where it needed to be."

Counsel for the county then re-cross-examined Shepherd as to the existence of a "policy":

"Q: Okay. Now, back to the question of policy. You didn't make a policy with regard to the use of ice melt with the county, did you?

"A: No, Sir."

Shepherd then testified that he had observed over a period of years that ice melt was never put in "the broader parking lot areas, but was limited to the entrance areas and sidewalks." According to Shepherd, he had never seen ice melt used anywhere other than on the sidewalks, or approach areas and going onto the sidewalks from the parking areas. Shepherd was asked if "That is the general practice," to which he responded, "As far as I, as long as I've lived in this area[;] that is what I have seen throughout, not only with the county, but private businesses and everything else."

Banks also testified regarding the existence of a policy for spreading ice melt. On direct examination, plaintiff's counsel asked Banks if "there [were] any rules that said you couldn't put it where all the people walk?" Banks answered,

"No." He then was asked if it "was just left up to the deputies to spread it where they wanted?" Banks answered,

> "Well, the rule of thumb for us is that we usually don't go and do a whole parking lot area. Any of the sidewalks that they find uh, or any kind of a pathway then yeah, I would say that, this isn't written down, but the general knowledge is that, yeah, any place that somebody would be walking to access the building uh, a pathway or a side, especially sidewalks, that yes, you would ice melt in areas that you would find ice or snow or anything like that."

On cross-examination by the county, Banks testified that the county does in fact have a "policy" that ice melt is not spread on parking lots. Banks testified that the policy is mostly because of expense; given the resources of his department, it would not be feasible to set aside the money required to put ice melt on parking lots. However, according to Banks, the policy is not directed at the deputies at the jail who spread the ice melt, but rather at his maintenance personnel. In fact, on re-cross examination, Banks testified that he never "said anything to any of the deputy sheriffs one way or another about where and how to apply [ice melt]."

At the close of evidence, the trial court granted a directed verdict on the ground that the county had discretionary immunity with regard to the alleged acts and omissions of its employees. In granting the motion, the trial court stated, "Mr. Banks testified that they did put it on the parking lot at the jail, but only in specific areas, not in the parking area per se. * * * I think there is a policy." The court continued,

> "The policy very fairly is sidewalks, areas of parking lots that are adjacent to entryways and certain walkways on the jail parking lot, not the parking lot per se. Jail personnel did have some discretion on when to use the quantity in locations of walking areas, but never had any discretion that I can see or never used any discretion to put [it] in the parking areas per se."

■ In reviewing the trial court's directed verdict in the county's favor, we determine whether the facts in evidence, interpreted in plaintiffs' favor, and every beneficial inference

that can be drawn from those facts, entitled the county to discretionary immunity as a matter of law. *Jones v. Emerald Pacific Homes, Inc.*, 188 Or App 471, 478, 71 P3d 574, *rev den*, 336 Or 125, 79 P3d 882 (2003); *McComb v. Tamlyn*, 173 Or App 6, 14-15, 20 P3d 237 (2001).

■■ The burden of proving discretionary immunity rests with the governmental defendant asserting that defense. *Stevenson v. State of Oregon*, 290 Or 3, 15, 619 P2d 247 (1980). ORS 30.265(3)(c), the statutory basis for discretionary immunity, provides that "[e]very public body and its officers, employees and agents acting within the scope of their employment or duties * * *" are immune from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Under the statute, "conduct is 'discretionary' in the sense that immunity attaches to its negligent performance if the decision is the result of a choice among competing policy considerations, made at the appropriate level of government * * *." *Garrison v. Deschutes County*, 334 Or 264, 273, 48 P3d 807 (2002). Although ORS 30.265(3)(c) extends immunity to decisions involving the making of policy, it does not extend "to routine decisions made by employees in the course of their day-to-day activities, even though the decision involves a choice among two or more courses of action." *Lowrimore v. Dimmitt*, 310 Or 291, 296, 797 P2d 1027 (1990).

Accordingly, to prevail on its affirmative defense of immunity, the county must prove that the decision not to spread ice melt where plaintiff slipped involved the exercise of a discretionary function. The county submits that ice melt was not spread in the parking lot area where plaintiff slipped because the county had a general policy against spreading ice melt in parking lot areas, and therefore the county has established immunity as a matter of law. Based on the record before us, and viewing the evidence in the light most favorable to plaintiff, we do not agree.

Assuming that the county had a general policy of not spreading ice melt on parking lots, the evidence in the record does not establish as a matter of law that the decision as to

where to spread ice melt at the county jail involved the application of that policy. Shepherd testified that there was no policy direction as to where to spread the ice melt, and that he simply made a "judgment call" on where to put the ice melt. Nor is there direct evidence that any of Shepherd's crew was aware of, let alone considered, any policy considerations when spreading the ice melt. Banks also testified that the policy does not relate to deputies who spread the ice melt, and that there were no rules prohibiting the deputies from spreading ice melt "where all the people walk."

Moreover, even the policy described by Banks could be viewed by a factfinder as something less than an absolute prohibition on spreading ice melt in parking lots. Banks testified that they "normally" will not apply ice melt to any of the parking lots, but that they will use ice melt on areas that are determined to be "concentrated walkways." He further testified that "the rule of thumb for us is that we usually don't go and do a *whole* parking lot area." (Emphasis added.) From that testimony (and evidence that Banks in fact spread ice melt in pathways in the parking lot), a reasonable factfinder could infer that the decision as to where to spread ice melt in the jail parking lot was separate from the budget decision concerning ice melt and parking lots generally.

■    We conclude, based on the above evidence and the permissible inferences that can be drawn from that evidence, that there is a disputed issue of fact that precludes the grant of a directed verdict. Based on the evidence at trial, a factfinder reasonably could determine that the county employees responsible for spreading ice melt at the jail were authorized to act according to their best judgment—and not pursuant to any policy. In that event, their decision not to spread ice melt on the area in which plaintiff slipped would not entitle them or the county to immunity.[2] *See McComb*, 173 Or App at 14 (state did not carry its burden on the issue of discretionary immunity where evidence did not establish that an earlier

---

[2] The judgment by sheriff deputies as to where to spread ice melt, though involving a choice between alternatives, is a ministerial function not entitled to immunity. *See Vokoun v. City of Lake Oswego*, 335 Or 19, 33, 56 P3d 396 (2002) (decisions by maintenance employees as to how to respond to erosion problems were routine decisions made by employees in the course of day-to-day activities and did not qualify for discretionary immunity).

policy judgment actually governed the acts and omissions at issue); *see also Mosley v. Portland School Dist. No. 1J*, 315 Or 85, 92, 843 P2d 415 (1992) ("[T]he choice to follow or not to follow a predetermined policy in the face of a particular set of facts involving the safety of a particular individual normally is not a discretionary policy choice entitled to immunity under ORS 30.265(3)(c)."). *Cf. Praggastis v. Clackamas County*, 305 Or 419, 429, 752 P2d 302 (1988) ("[T]he general principal [is] that employees who are following the *explicit* orders of their superiors who have exercised discretionary authority in making such decisions will not be answerable for performing their duty." (Emphasis added.)).

Nonetheless, the county argues that three "sidewalk maintenance" cases from this court, *Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 39 P3d 931 (2002), *Ramsey v. City of Salem*, 76 Or App 29, 707 P2d 1295 (1985), and *Sager v. City of Portland*, 68 Or App 808, 684 P2d 600 (1984), are dispositive on the issue of discretionary immunity. We disagree. In each of those cases, there was no dispute as to whether the employees were following a policy of sidewalk maintenance and inspection that resulted from a budgetary decision to allocate resources to more pressing needs. Presumably, had the inspectors never been informed of those budgetary decisions, and continued to inspect sidewalks as they had before the decisions, their acts or omissions would not have been cloaked with discretionary immunity. That scenario is analogous to this case, where there is evidence from which a trier of fact could find that the deputies were not aware of and were not following any policy as they spread ice melt.

In sum, discretionary immunity is not conferred by happenstance; it insulates policy decisions by government actors and the employees who intentionally carry out those policy decisions. Because there are material issues of fact as to whether the county's policy to spread ice melt actually governed the conduct of the county's employees, the trial court erred in granting the county's motion for a directed verdict.

Reversed and remanded.