Argued and submitted June 21, 2023, affirmed August 16, 2023

ESQUIRE INVESTMENTS, INC.,
and George Gebrayel,
*Plaintiffs-Appellants,*

*v.*

Rebecca SUMMERS,
fka Rebecca Vaage,
and Justin Carter,
*Defendants-Respondents.*

Yamhill County Circuit Court
19CV53808; A178269

536 P3d 1081

This case arises from a land dispute. Plaintiffs filed the action below seeking, among other things, a declaratory judgement determining whether a public easement exists over defendant's property. On appeal, plaintiffs raise two assignments of error: First, plaintiffs assert that the trial court erred in concluding that defendant's property is not subject to a public easement. Second, plaintiffs assert that the trial court erred in concluding that, even if the defendant's property is subject to a public easement, the easement was not accepted by the county and, therefore, never took effect. *Held*: The trial court did not err in concluding that defendant's property is not subject to a public easement. Plaintiffs' primary argument on appeal, based on the doctrine of merger, was not preserved, and there is a substantial question whether the 1979 warranty deed on which plaintiffs' merger argument depends unambiguously subjected the property to an earlier easement that the developer granted, without authority, during the pendency of a land sale contract. The Court of Appeals accordingly rejected plaintiffs' first assignment of error and, therefore, did not need to reach the second.

Affirmed.

Cynthia L. Easterday, Judge.

Nathan R. Morales argued the cause for appellants. Also on the briefs were Rachelle D. Collins and Stoel Rives LLP.

Billy M. Sime argued the cause for respondent Rebecca Summers. Also on the brief was Parks, Bauer, Sime, Winkler & Walker, LLP.

No appearance for respondent Justin Carter.

Before Shorr, Presiding Judge, and Pagán, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

**KISTLER, S. J.**

Plaintiffs appeal a limited judgment declaring that defendant's property is not subject to a public easement but is subject to a separate, private easement that does not benefit plaintiffs.[1] We affirm the trial court's judgment.

Plaintiffs and defendant own adjoining parcels of land in Yamhill County.[2] Over the years, disputes have arisen between them. Plaintiffs filed this action alleging, among other claims, a request for a declaratory judgment "determining the rights and liabilities" of the parties. Specifically, plaintiffs sought a declaration that they have an easement over defendant's property. On appeal, plaintiffs rely primarily on the doctrine of merger to support their claimed easement. They contend that, when defendant's predecessor in interest paid off the amount owing under a land sale contract and accepted a 1979 statutory warranty deed, that deed unambiguously established that the deeded property was subject to a 1972 easement for a public road. Defendant responds that plaintiffs failed to preserve their merger claim. Before turning to the parties' dispute, we first describe the underlying historical facts. We then set out the parties' arguments at trial, describe the trial court's ruling, and address plaintiffs' merger claim.

In 1968, Three Creeks Ranch sought to subdivide approximately 260 acres of land it owned in Yamhill County into 50 roughly five-acre lots. It sold three lots in the proposed subdivision before it applied for approval of its subdivision plat in June 1968. The next month, the county denied Three Creeks' application. Despite the county's denial, Three Creeks entered into a land sale contract with defendant's predecessor in interest in November 1968.

Among other things, the 1968 land sale contract provided that, when defendant's predecessor in interest paid the purchase price in full, Three Creeks would deliver a "good and sufficient deed" conveying the described premises

---

[1] Plaintiffs brought this action against two defendants, Summers and Carter. Because the limited judgment does not adjudicate Carter's rights, the term "defendant" refers to Summers.

[2] For the most part, the historical facts are undisputed. To the extent a dispute exists, we state the facts consistently with the trial court's judgment.

free and clear of all liens except (1) any lien or encumbrance created by the purchaser and (2) "Deed restrictions and reservations set forth in Exhibit 1 attached [to the land sale contract] and by this reference incorporated herein." The land sale contract provided further that Three Creeks "reserves unto itself an easement 50 feet in width for the purpose of locating utilities, including but not limited to water, light, sewage and drainage, and for the purpose of providing a road for ingress and egress to other lots located within the tract being developed by [Three Creeks]."

The "deed restrictions and reservations" set out in Exhibit 1 to the land sale contract are essentially two-fold. First, they parallel one of the provisions in that contract; they reserve 50-foot easements for utilities and easements for ingress and egress to be located, as reasonably necessary, by a building committee. Second, they include terms that are often found in codes, covenants, and restrictions governing subdivisions; they establish a building committee, require that the plans for any building be approved by the committee, provide set-back requirements, and impose similar restrictions on the use and enjoyment of the property located within the proposed subdivision.

In 1979, defendant's predecessor in interest paid the purchase price in full, and Three Creeks' successor, Southridge Development Co., recorded a statutory form warranty deed for the property that defendant now owns. After describing the property, the 1979 warranty deed recites that the property "is free from all encumbrances except [i]t is subject to a 50.0 foot road easement along the North line of the above described tract, and deed restrictions and reservations."

Between the time that Three Creeks and defendant's predecessor in interest entered into the 1968 land sale contract and the time that Southridge recorded the 1979 warranty deed, either Three Creeks or Southridge recorded three deeds that relate to defendant's property and that give rise to the parties' arguments in this case. We describe those deeds briefly.

First, in 1970, Three Creeks recorded a deed designating a 50-foot-wide easement for "roadway purposes"

that runs along the northern part of defendant's property and that burdens and benefits four lots—defendant's lot and the three lots that Three Creeks sold before it applied for approval of its subdivision plat in June 1968.[3] The deed creating the 50-foot easement recites that Three Creeks and the purchasers of the four lots agreed to the easement.

Second, in 1972, Southridge recorded a deed captioned "Deed Reservations and Restrictive Covenants." The contents of that deed are essentially identical to the "deed restrictions and reservations" that were attached to and incorporated in the 1968 land sale contract between Three Creeks and defendant's predecessor in interest.

Third, in 1972, Southridge recorded a deed granting a 60-foot-wide "right-of-way for a public road through its lands located in Yamhill County[.]" The deed describes six lots over which the 60-foot public road runs. One of those lots is the property that defendant now owns.[4]

With that factual background in mind, we describe the parties' arguments at trial and the trial court's ruling. We begin by setting out defendant's trial arguments, which provide context for understanding the arguments that plaintiffs made at trial.

Relying on the doctrine of equitable conversion, defendant argued at trial that, when Three Creeks and defendant's predecessor in interest entered into the 1968 land sale contract, defendant's predecessor in interest was regarded as the owner of the property and that the legal title that Three Creeks and its successor Southridge retained served only as a security interest in case defendant's predecessor in interest failed to pay the full amount of the purchase price. It followed, defendant argued to the trial court, that Southridge lacked any interest in defendant's property in 1972 that would permit it to impose a right of way for a public road over that property. Alternatively, defendant

---

[3] The 50-foot easement lies wholly within defendant's property before it continues through the three adjacent properties that it benefits and burdens.

[4] The trial record contains little relevant information about plaintiffs' property other than that plaintiffs have owned it since 1987 and that it is adjacent to defendant's property. Neither the deed to plaintiffs' property nor their chain of title is part of the trial record.

argued that, even if Southridge had authority to grant an easement over defendant's property in 1972, the public road easement that Southridge sought to grant became effective only if the county accepted it, which it never did. Finally, defendant contended that the 50-foot easement created by the 1970 deed was a separate, private easement that only burdened and benefitted the four lots identified in that deed.

Plaintiffs raised various arguments in response.[5] Plaintiffs' trial counsel began by arguing that the 50-foot easement created by the 1970 deed was not in fact a private easement "but [was] rather a public right of way." At various points during trial, plaintiffs' counsel appeared to conflate the 50-foot easement created by the 1970 deed with the 60-foot easement described in the 1972 deed and conclude that, because the latter sought to create a right of way for a public road, so did the former.[6] At other points in plaintiffs' argument, plaintiffs started from the premise that the 1972 deed created a public right of way over defendant's property; however, plaintiffs' counsel never responded to defendant's argument that, as a result of the doctrine of equitable conversion, Southridge lacked authority in 1972 to unilaterally impose that easement on defendant's property. Rather, plaintiffs' counsel focused on the claim that the county did not need to accept the 1972 right of way for a public road for it to become effective. Finally, plaintiffs' counsel argued that plaintiffs had either an implied easement or an easement by necessity over defendant's property.

During closing arguments, the trial court asked counsel several times for the equivalent of a special verdict form that would specify the issues that the parties wanted the court to decide. In response to that request, plaintiffs' counsel identified one additional issue: He argued that, even if the 50-foot easement was private rather than public,

---

[5] Plaintiffs did not file a trial memorandum. Moreover, their counsel waived opening statement and made only a brief closing argument. We glean plaintiffs' arguments from their counsel's colloquies with the court during trial and their counsel's closing argument. We note that the law firm that represented plaintiffs at trial differs from the firm that currently represents them on appeal.

[6] The descriptions of the two easements overlap in part but are not coterminous. The 50-foot easement runs along the northern boundary of defendant's property but lies wholly within her property. The centerline of the 60-foot public easement is described as running along defendant's northern property line.

properties that were adjacent to the private easement but not expressly benefitted by it should still be able to use it. After the court asked defense counsel whether that issue had been fully litigated, the court took that and the other issues that the parties had identified under advisement.

The court issued a letter opinion resolving those issues, which it later reduced to a limited judgment. In its letter opinion, the court found that plaintiffs had failed to prove that they had either an implied easement or an easement by necessity over defendant's property. It also found that the 1970 deed for a 50-foot easement created a private easement over defendant's property that benefitted only the three lots identified in that deed; in doing so, it rejected plaintiffs' argument that adjacent landowners who were not expressly benefitted by the 50-foot private easement could use it. Finally, the court agreed with defendant's legal argument that, once Three Creeks entered into the 1968 land sale contract with defendant's predecessor in interest, Three Creeks and its successor Southridge held legal title to the property in 1972, but it concluded that that interest was not sufficient, standing alone, to permit Southridge to unilaterally impose a 60-foot "right-of-way for a public road" over what is now defendant's property. Additionally, the court ruled that, even if Southridge had the authority in 1972 to burden defendant's property with an easement for a public road, the easement never became effective because the county did not accept it.

On appeal, plaintiffs raise two assignments of error. Their first assignment of error is directed at the trial court's ruling that defendant's property is not subject to the 60-foot "right-of-way for a public road" described in the 1972 deed. Their second is directed at the trial court's ruling that, even if defendant's property is subject to a 60-foot easement for a public road, the easement never became effective because the county did not accept it.[7] Because we conclude

---

[7] Plaintiffs do not argue on appeal, as they did at trial, that they had either an implied easement or an easement by necessity over defendant's property. They do not contend that the 50-foot easement created by the 1970 deed is a public easement, nor do they contend that, even if it is a private easement that benefits specific lots, any adjacent property owner can use it. Finally, they do not argue that Southridge could or did rely on the reservation in the "deed restrictions and reservations" attached to the 1968 land sale contract to create the 1972 public

that plaintiffs' first assignment of error is not well taken, we need not reach their second assignment of error.

Plaintiffs raise alternative arguments in support of their first assignment of error. Their primary argument is based on the doctrine of merger and runs as follows. Plaintiffs contend that the 1979 warranty deed unambiguously conveyed the property to defendant's predecessor in interest subject to the "right-of-way for a public road" described in the 1972 deed. Plaintiffs reason that, when defendant's predecessor in interest accepted the 1979 warranty deed, that deed superseded whatever rights defendant's predecessor in interest had (or Southridge lacked) under the 1968 land sale contract. Specifically, they contend that the parties' rights and obligations under the 1968 land sale contract "merged" into the unambiguous terms of the 1979 warranty deed that defendant's predecessor in interest accepted. *Cf. City of Bend v. Title & Trust Co.*, 134 Or 119, 127, 289 P 1044 (1930) (explaining that the parties to a contract for the sale of land may agree to change the obligations arising under that contract and that, under the common law doctrine of merger, "acceptance of a deed varying from a contract may indicate such an amendment of the original contract[.]").[8]

We question, as an initial matter, whether the 1979 statutory warranty deed unambiguously subjected defendant's property to the public right of way described in the 1972 deed. As noted above, after describing the deeded property, the 1979 warranty deed recited that the property "is free from all encumbrances except [i]t is subject to a 50.0 foot road easement along the North line of the above

———————————

easement; that is, they do not argue that the authority Three Creeks reserved in the 1968 deed to create reasonably necessary 50-foot easements for the ingress and egress of the property owners within the subdivision authorized Southridge to create a 60-foot public easement in 1972 that anyone and everyone could use for any reason.

[8] Plaintiffs' primary argument does not take issue with defendant's contention that Southridge lacked authority to unilaterally impose a 60-foot public easement on defendant's property in 1972. Rather, as we understand plaintiffs' primary argument, it turns on the proposition that whatever lack of authority that Southridge may have had in 1972 to unilaterally encumber defendant's property is immaterial because defendant's predecessor in interest accepted the 1979 warranty deed, which unambiguously imposed the "right of way for a public road" described in the 1972 deed on the deeded property. That much follows, they contend, from the doctrine of merger.

described tract, and deed restrictions and reservations." Plaintiffs reason that the phrase "deed restrictions and reservations" unambiguously refers to previously recorded deeds reserving interests in defendant's property, such as the 1972 deed imposing a 60-foot "right-of-way for a public road" over defendant's property, and that defendant's predecessor in interest took the deeded property subject to that exception.

Textually, plaintiffs' interpretation of the phrase "deed restrictions and reservations" in the 1979 warranty deed is problematic. If plaintiffs are correct that that generic phrase excepts all previously recorded encumbrances, then the first exception that the 1979 warranty deed notes—for a "50.0 foot road easement"—would be redundant. After all, Three Creeks had recorded a deed in 1970 creating a 50-foot private easement along the north line of defendant's property. And plaintiffs never explain why, if their reading of the phrase "deed restrictions and reservations" in the 1979 warranty deed is correct, that generic exception would not include both the 50-foot private easement created by the 1970 deed and the 60-foot public easement described in the 1972 deed—rendering the specific exception for the 50-foot easement in the 1979 warranty deed unnecessary. To put the point a different way, why would Southridge have specifically excepted the 1970 50-foot private easement from the property deeded to defendant's predecessor in interest but buried an exception for the 1972 60-foot public easement in a generic phrase like "deed restrictions and reservations"?

Not only does plaintiffs' reading of the phrase "deed restrictions and reservations" in the 1979 warranty deed result in textual anomalies, but an equally plausible—and perhaps more persuasive—reading is possible. As noted above, the 1968 land sale contract provided that, on receiving the full purchase price, the seller would deliver to defendant's predecessor in interest a good and sufficient deed free and clear of all liens except (1) any lien or encumbrance created by the purchaser and (2) "Deed restrictions and reservations set forth in Exhibit 1 attached [to the land sale contract] and by this reference incorporated herein." The two exceptions set out in the 1979 warranty deed parallel

the two exceptions identified in the 1968 land sale contract. The first exception in the 1979 warranty deed for the 50-foot roadway easement was created by defendant's predecessor in interest when they agreed to the 1970 deed creating that easement. And the second exception in the 1979 warranty deed uses the same phrase "deed restrictions and reservations" that the second exception in the 1968 land sale contract does.

The only difference between the two identically worded phrases in the 1968 land sale contract and the 1979 warranty deed is that the 1968 land sale contract defines what the phrase "deed restrictions and reservations" means. It means those restrictions and reservations set out in the attachment to the 1968 contract. It does not mean all previously recorded deeds reserving an interest in the property, as plaintiffs contend. And defendant's predecessor in interest reasonably could have understood that the phrase "deed restrictions and reservations" in the 1979 warranty deed meant nothing more or less than what it meant in the 1968 land sale contract, or so the trial court could find. *Cf. Sea River Properties, LLC v. Parks*, 355 Or 831, 845, 333 P3d 295 (2014) (quoting *Wirostek v. Johnson*, 266 Or 72, 75, 511 P2d 373 (1973), for the proposition that, "[i]n interpreting a deed, a court must 'ascertain and give effect to the intentions of the parties, as evidenced by the language of the instrument and the circumstances attending its execution'").

Ultimately, however, the difficulty with plaintiffs' claim that the unambiguous terms of the 1979 warranty deed superseded the parties' rights under the 1968 land sale contract is the one that defendant notes: Plaintiffs failed to preserve that issue in the trial court. Plaintiffs raised a variety of issues at trial. But they never told the trial court that, in their view, the phrase "deed restrictions and reservations" in the 1979 warranty deed unambiguously referred to all previously recorded deeds reserving an interest in the property. They never argued that, even if Southridge lacked authority to unilaterally impose an easement on defendant's property in 1972, the phrase "deed restrictions and reservations" in the 1979 warranty deed was so clear that, when defendant's predecessor in interest accepted the statutory

warranty deed in 1979, the property became encumbered with the 1972 public easement. And plaintiffs never mentioned the doctrine of merger nor gave defendant fair notice that she needed to raise any defenses that she might have to merger, such as fraud or mistake, in the trial court. *See City of Bend*, 134 Or at 129 (listing fraud and relievable mistake as defenses to merger).

As a result, the trial court had no occasion to decide whether the phrase "deed restrictions and reservations" in the 1979 statutory warranty deed is unambiguous, as plaintiffs now argue. Nor did it consider, if the phrase is ambiguous, what it means or how any ambiguity might affect plaintiffs' merger claim. Finally, plaintiffs never gave defendant reason to argue or the trial court to consider whether, if plaintiffs' interpretation of the generic phrase "deed restrictions and reservations" in the 1979 warranty deed were correct, the rules governing statutory warranty deeds would preclude plaintiffs' reliance on the 1972 easement. *See* ORS 93.850(2)(c)(B) (requiring that any encumbrance to a statutory warranty deed be "specifically set forth on the deed"); *cf. Freeborn v. Dow/Western Title and Escrow Co.*, 322 Or App 695, 705-06, 522 P3d 549 (2022), *rev den*, 370 Or 822 (2023) (explaining that the rules that govern statutory warranty deeds, which were enacted in 1973, were intended to simplify and codify the doctrine of merger).

The court explained in *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008):

> "Preservation rules are pragmatic as well as prudential. What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court."

In our view, the arguments that plaintiffs raised at trial never gave the trial court or defendant fair notice of the merger issue that plaintiffs are now raising on appeal. That is especially true when the trial court asked the parties several times during closing argument for a roadmap identifying the issues that they wanted the court to decide, and plaintiffs never told the trial court that it needed to decide

whether, as a result of the doctrine of merger, the phrase "deed restrictions and reservations" in the 1979 statutory warranty deed unambiguously subjected defendant's property to the 1972 public easement.

Plaintiffs reason, however, that, under *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), preservation required only that they argue that defendant's property was subject to the 1972 public easement, which they did. Having presented that generic argument to the trial court, they contend that preservation did not require them to identify a particular source for their claim, such as the doctrine of merger, or to make a specific argument, such as that the phrase "deed restrictions and reservations" in the 1979 warranty unambiguously referred to the 1972 public easement and that, by accepting the 1979 warranty deed, defendant's predecessor in interest subjected defendant's property to the 1972 public easement.

The three categories that *Hitz* identified—issues, sources, and arguments—can provide helpful guidance in determining whether a party has preserved an issue. However, those three categories are not self-defining, and what one party reasonably may describe as an issue another reasonably may describe as a theory or an argument. In *Peeples*, the court cited the three categories identified in *Hitz* and explained that the "touchstone" in determining whether a party has preserved an issue in the trial court is "procedural fairness to parties and the court." *Peeples*, 345 Or at 220. Having identified that touchstone, the court avoided using categories such as "issue," "source," and "argument" to determine preservation. Rather, it explained that the touchstone it identified controlled whether either a "claim" or an "argument" had been preserved. *Id.* Following *Peeples*, we conclude that plaintiffs failed to preserve their claim that, under the doctrine of merger, the 1979 warranty deed encumbered defendant's property with the right of way for a public road described in the 1972 deed.

We turn to plaintiffs' alternative argument in support of their first assignment of error. In their reply brief, plaintiffs note that, between the time defendant's predecessor in interest entered into the 1968 land sale contract

and the time that the purchase price was paid in full in 1979, Three Creeks and its successor Southridge held legal title to the property. They reason, that, "because Southridge had legal title to the property in 1972, it necessarily had the legal authority to create a public right of way across the property during that year."

Plaintiffs, however, cite no authority for that proposition, and their basis for asserting it is not completely clear. The court has long recognized that the purchaser in a land sale contract "is looked upon and treated as the owner of the land[.]" *City of Reedsport v. Hubbard et ux.*, 202 Or 370, 390, 274 P2d 248 (1954). The seller, by contrast, retains a limited interest: "(1) the right to receive contract payments, and (2) the legal title in the property securing the purchaser's obligation to make the contract payments, with the concomitant possibility of resuming general ownership of the land upon default." *Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 311, 822 P2d 694 (1991) (internal quotation marks omitted).

Applying the doctrine of equitable conversion, the court has recognized that the legal title that the seller retains is often viewed as an interest in personal, not real, property. *See Panushka v. Panushka*, 221 Or 145, 150, 349 P2d 450 (1960) (declining to describe the "naked legal title, which the [seller] holds in trust as security for the payment of the purchase money" as an interest in land that was subject to descent on the seller's death). However, three years after it decided *Panushka*, the court cautioned that the doctrine of equitable conversion does not automatically apply with full force in every land sale contract. *Heider v. Dietz*, 234 Or 105, 112, 380 P2d 619 (1963). Rather, there are categorical exceptions to the doctrine's application, such as when the land sale contract is not specifically enforceable, *id.*, or when, as in *Heider*, treating the seller's interest as personal property would cut off the rights of a third-party judgment creditor to "levy upon and sell any interest [the seller] may have had in the security represented by the [seller's] legal title * * *." *Id.* at 116; *see also May v. Emerson*, 52 Or 262, 96 P 454, *reh'g den*, 96 P 1065 (1908). In the latter instance, the seller's legal title is regarded as an interest in real property to which the third-party's recorded judgment lien will

automatically attach. *Bedortha*, 312 Or at 314; *Heider*, 234 Or at 116.

In their reply brief, plaintiffs have not explained why the land sale contract between Three Creeks and defendant's predecessor in interest is not subject to the doctrine of equitable conversion. Nor have they explained why, even if the legal title that Southridge retained is regarded as an interest in real property, it was sufficient to permit Southridge to unilaterally encumber the purchaser's interest in the property with the 1972 public easement. *See Bedortha*, 312 Or at 311 (describing the legal title that the seller retained as a security interest in the property that permitted the seller to "resum[e] general ownership of the land upon [the purchaser's] default").[9] Plaintiffs' arguments provide no reason to disturb the trial court's judgment.

Affirmed.

---

[9] Plaintiffs raise one more point in their reply brief. They contend that defendant waited "too long" to argue that Southridge lacked authority to unilaterally burden defendant's property in 1972 with 60-foot right of way for a public road. To the extent that plaintiffs are asserting laches or perhaps a statute of limitations claim, they failed to raise those claims at trial.