510 July 2, 2025 No. 578

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ESQUIRE INVESTMENTS, INC.,
an Oregon corporation;
and George Gebrayel,
*Plaintiffs-Appellants,*

*v.*

Estelle L. FIRESTONE
and Michael C. Firestone,
*Defendants-Respondents.*

Yamhill County Circuit Court
18CV35206; A179633

Cynthia Kaufman Noble, Judge.

Submitted September 13, 2024.

Nathan R. Morales, Rachelle D. Collins and Stoel Rives LLP filed the briefs for appellants.

Joseph A. Pickels and Brisbee & Stockton LLC filed the brief for respondents.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

This case involves a dispute between neighboring landowners over the use of a road located on defendants' property. Defendants placed a gate across the road, preventing plaintiffs and members of the public from using it. Plaintiffs initiated this action seeking, among other things, a declaratory judgment declaring the rights of the parties with respect to the road and ordering defendants to remove the barricade because the road was a public right-of-way. Following a bench trial, the trial court granted defendants' motion for directed verdict and entered a judgment dismissing plaintiffs' claims. The judgment declared that the road was not a public right-of-way because there was no evidence that the county had accepted it as such. Plaintiffs appeal that judgment. As explained below, we conclude that county acceptance was not required to complete the dedication of a public right-of-way, and therefore, we reverse and remand for further proceedings.

Plaintiffs and defendants own adjoining parcels of land in Yamhill County. The road at issue is a gravel road that runs along the northern portion of defendants' property and connects to a county road. In May 1968, Three Creeks Ranch entered into a land sale contract, selling what is now defendants' property to the Joneses, defendants' predecessors in interest. The contract provided that Three Creeks Ranch would convey the property in fee simple to the Joneses upon completion of monthly payments of the purchase price. The lot sold to the Joneses was part of a planned subdivision, but the application for a subdivision was rejected by the county in July 1968.[1] In 1972, Southridge Development Co. (Southridge), successor to Three Creeks Ranch, signed and recorded a deed conveying a "right-of-way for a public road" through land which included defendants' property. That deed was recorded in Volume 89, Page 1420, of the Yamhill County deed records. In 1973, upon fulfillment of the terms

---

[1] Defendants cite *Mathis v. Thunderbird Village, Inc.*, 236 Or 425, 439-40, 389 P2d 343 (1964), to argue that the county's rejection of the subdivision constituted a refusal to accept the public right-of-way. That argument does not assist defendants because, in this case, the county's rejection of the subdivision application occurred four years before the deed dedicating the road as a public right-of-way. Plaintiffs relied on the *later* deed to as a basis for the dedication of the road.

of the land sale contract, Southridge deeded the property to the Joneses. In 2010, subsequent owners conveyed that same property to defendants by warranty deed. That deed expressly excepted those portions conveyed "to the Public by Deed recorded June 2, 1972, in Film Volume 89, Page 1420, Deed and Mortgage Records."

In 2017, defendants placed a gate across the road at issue to deter thefts. Plaintiffs filed a complaint alleging that defendants unlawfully barricaded the public right-of-way. Plaintiffs requested, among other things, a declaratory judgment determining the rights and liabilities between the parties and injunctive relief requiring the removal of the barricade. At the subsequent bench trial, defendants moved for directed verdict on plaintiffs' claim for declaratory judgment. The trial court granted the motion because it determined that plaintiffs had not met their burden of "proving that it is a public right-of-way." The court then entered a judgment of dismissal, stating in relevant part that there was "no evidence that Yamhill County ever accepted a public right-of-way over what is now [defendants'] property" and that "a public right-of-way does not exist over [defendants'] property." Plaintiffs appeal that judgment.

In a single assignment of error, plaintiffs argue that the trial court erred in declaring that no public right-of-way exists over defendants' property because there was no evidence that the county had accepted it.[2] They contend that county acceptance of a road dedication relates to whether the county has liability for maintenance but is irrelevant to whether the public has access to the right-of-way. Defendants maintain that county acceptance is required for a public

---

[2] Plaintiffs assign error to the declaration in the declaratory judgment. We have permitted assignments of error to the declaration in the judgment when the assignment is to the declaratory judgment *ruling. Deschutes County v. Pink Pit, LLC*, 306 Or App 563, 570 n 4, 475 P3d 910 (2020). Of course, a judgment is merely "the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document," and may just be the result of many prior rulings of the court. ORS 18.005(8). Here, the ruling that immediately led to the judgment was the trial court's grant of defendants' motion for directed verdict. In this case, we understand plaintiffs to challenge that ruling and the resulting declaratory judgment ruling. A safer course, when the judgment is more general, is to assign error to the court's ruling that led to the judgment. *See* ORAP 5.45(3) (stating that each assignment "must identify precisely the legal, procedural, factual or other ruling that is being challenged").

right-of-way to exist.[3] The parties do not contend that there are disputed issues of material fact regarding the county's acceptance of the public road, which would have prevented a directed verdict. *See, e.g.*, *Weatherford v. County of Klamath*, 201 Or App 601, 607, 120 P3d 530 (2005) (concluding that the trial court erred in granting a directed verdict because there were disputed issues of fact). We understand both parties to agree that there is nothing in the trial record that shows that the county itself accepted the dedication of the road. After reviewing the record, we agree. The sole legal issue before us is whether the county is required to accept the dedication of the road for it to be a public road. We review the trial court's conclusion on that issue for legal error. *Neff v. Sandtrax, Inc.*, 243 Or App 485, 487, 259 P3d 985, *rev den*, 350 Or 716 (2011).

"A dedication is an appropriation of land by the owner for a public use"—for example, the dedication by a private property owner of land to be used as a public roadway. *Dayton v. Jordan*, 279 Or App 737, 746, 381 P3d 1031 (2016) (internal quotation marks omitted). "[T]o constitute a valid dedication, there must be an intention on the part of the owner to devote his property to a public use, and this intention must be clearly and unequivocally manifested." *Harris v. City of St. Helens*, 72 Or 377, 392, 143 P 941 (1914) (emphasis omitted). The doctrine of common law dedication "rests on a theory of equitable estoppel." *Mid-Valley Resources v. Foxglove Properties*, 280 Or App 784, 789, 381 P3d 910 (2016). Accordingly, "the well-recognized rule is that neither a formal acceptance by the county nor the immediate opening and improvement of a street are essential to complete an irrevocable dedication." *McCoy v. Thompson*, 84 Or 141, 149, 164 P 589 (1917). Rather, acceptance "may be effected by public use[] alone, without any action on the part of the public highway authorities." *Montgomery v. Somers*, 50 Or 259,

---

[3] Defendants also argue that Southridge lacked authority to convey a public right-of-way in 1972 and that, even assuming they had conveyance authority, the right-of-way was rescinded in 1994. Those arguments were not raised at trial. Plaintiffs "might have created a *different* record below had the prevailing party raised th[ose] issue[s], and that record could affect the disposition of the issue[s]." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) (emphasis in original). We therefore "will not consider the alternative bas[es] for affirmance." *Id.*

266, 90 P 674 (1907).[4] Thereafter, owners of the encumbered land are "estopped to question" the dedication and "enjoined from in any manner obstructing it." *Morse v. Whitcomb*, 54 Or 412, 422-23, 102 P 788 (1909). "[S]ubsequent entrymen and claimants" to the encumbered land "take subject to such easement." *Montgomery*, 50 Or at 266.

In the 1972 deed recorded with the county, Southridge made an express dedication of "a right-of-way for a public road." That deed appeared to demonstrate a clear and unequivocal intent to dedicate a portion of land for the public use. *Harris*, 72 Or at 392. The 2010 deed by which defendants obtained title to their property expressly referenced and excepted the 1972 dedication to the public. We understand defendants to contend that, even assuming that there was a clear dedication, they are not bound by the dedication absent an acceptance of the road by the county. Defendants argue that "a dedication is not binding and conclusive on either party until accepted," *Hendrickson v. City of Astoria*, 127 Or 1, 8, 270 P 924 (1928), and that there is no evidence that Yamhill County accepted the dedication.

*Hendrickson* concerned whether a city was liable for an injury that occurred on a portion of street that was dedicated for public use. *Id.* at 3-4. The Supreme Court concluded that "[p]roperty owners cannot for their own benefit or convenience impose a street or highway upon a municipality against its will and compel it to improve or repair the street or highway." *Id.* at 8. In other words, a county is not liable to maintain a road that it has not accepted. But *Hendrickson* concerned county maintenance—it did not take away the public's ability to accept access to a public road on its own behalf. *See Harris*, 72 Or at 386 (stating that acceptance of a dedication can be made "by *or* on behalf of the public") (emphasis added)); *see also* Sheldon W. Parks, *The Law of Dedication in Oregon*, 20 Or L Rev 111, 139 (1941) ("Acceptance by the public user is sufficient to bind the dedicator from revoking his offer, but * * * is insufficient to bind the municipality" to keep

---

[4] ORS 368.096(1)(a) now provides that a county may, by a local proceeding, acquire real property for public road purposes through an "[a]cceptance of a dedication or donation." ORS 368.096(2)(c) provides that nothing in this section "[r]estricts the ability of a public body to acquire an interest in property by any other method permitted by law."

the road in repair.). Thus, while acceptance can be made by the county, public use can also "constitute[ ] the acceptance of a dedication otherwise established."[5] *Montgomery*, 50 Or at 266. For acceptance by public use, it is "only necessary that those who would naturally be expected to enjoy it do, or have done so, at their pleasure and convenience." *Id.* at 266-67. Defendants' brief also seems to acknowledge that acceptance of a dedication can be made by several methods, including public use. Defendants do not explain why, in this case where county maintenance is not at issue, acceptance had to be made by the county rather than by the public itself.

We conclude that, under the circumstances of this case, the trial court erred in granting defendants a directed verdict and declaring that a public right-of-way did not exist over defendants' property because the county had not accepted the dedication. We note the limited nature of our holding. We conclude only that the county did not have to accept the dedication for there to be a public right-of-way. We do not reach other issues that were not developed below, including but not limited to whether Southridge was the owner of the property or otherwise had the authority to make the dedication at the time it did and, if so, whether there was use by the public that manifested acceptance of Southridge's dedication. *See Esquire Investments, Inc. v. Summers*, 327 Or App 509, 521-22, 536 P3d 1081 (2023) (discussing Southridge's authority to make a dedication in a related dispute between plaintiffs and other landowners). As a result, we remand for further proceedings.

Reversed and remanded.

---

[5] Other jurisdictions have similarly concluded under their common law that acceptance of a dedication can be made by the county or by the public. *See Ellington v. Becraft*, 534 SW 3d 785, 793 (Ky 2017) ("Counties may officially act to adopt county and public roads. But the public may still acquire rights of passage without any involvement from public officials."); *Town of Granby v. Feins*, 154 Conn App 395, 403, 105 A3d 932 (2014) ("[A]cceptance of property dedicated for public use may be established *either* by the public's actual use of the property *or* by the actions of the municipality." (Emphasis in original.)).

In addition, although enacted after the 1972 dedication, ORS 368.026 provides additional support for the point that the lack of county acceptance does not invalidate public access to a road. ORS 368.026(3) provides that, "[i]f a county governing body withdraws county road status from a portion of a county road, the road shall continue to be a public road." A public road is "a road over which the public has a right of use that is a matter of public record." ORS 368.001(5).